## AMERICAN ROCK MECHANICS, INC., Appellee,

### v.

## THERMEX ENERGY CORPORATION; Independent Explosives Company, Appellant.

[Cite as *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.* (1992), 80 Ohio App.3d 53.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 60080.

Decided May 18, 1992.

54

*John C. Kealey,* for appellee.
*John D. Campbell,* for appellant.

WEAVER, Judge.

Appellant, Independent Explosives Company ("Independent"), timely appeals the outcome of a jury trial which resulted in a verdict in favor of appellee, American Rock Mechanics, Inc. ("American Rock"). We affirm the decision and remand the case to the lower court for a new journal entry clarifying the fact that a judgment exists against American Rock in the amount of $75,000.

The evidence presented to the jury consisted of the following:

In October 1987, appellee successfully bid on a subcontract to drill and blast subsurface rock in Elyria, Ohio for the purpose of installing a sanitary sewer system. This construction project required the use of explosives to break up the subsurface rock to facilitate excavation.

The record reflects that there was a substantial amount of consultation between the parties regarding the appropriate explosives to be used, given the characteristics of the project. Appellee explained the project to Dick Kent, an agent and representative of appellant. Appellant recommended an explosive manufactured by Thermex Energy Corporation ("Thermex"). The product was designated T-600.

T-600 was an explosive that was manufactured by Thermex and sold by Independent. Prior to Dick Kent's recommendation of T-600, Ed Walter, of American Rock, described the important characteristics of the area that he would need to blast. While Kent did discuss some of the technical characteristics of the T-600, he did not explain that T-600 required warm-up-time allowances. Despite the fact that at the time the T-600 explosives were being purchased there was conversation with other Independent representatives in Kentucky and Cleveland, there were still no limitations placed on the use of the T-600 by Independent.

Having purchased and utilized the T-600 on the project in Elyria, Ohio, American Rock began to experience difficulties in early December 1987. American Rock contacted Independent about the problem. The agent with whom these problems were discussed was again Dick Kent. American Rock described the difficulties as both poor and good breakage, holes in which the explosives were shot and left empty, and live explosives remaining in the trench.

American Rock discussed certain changes with Kent and he did not voice any objections to those changes. American Rock remained under the impression that it was using the T-600 within the proper specifications. Independent never raised the issue of explosive product temperature during the discussions about the problems that American Rock was having on the job site.

The blasting on the project was terminated in February 1988. In March 1988, Kent sent some T-600 samples to the explosives laboratory of Independent for testing. The testing was conducted by Rehman Habib. A lab report of April 1988 indicated that there was nothing wrong with the T-600 product. Independent tested only product from stock and frozen samples and not from the actual job site. However, there was still some reference to temperature as a problem.

Independent's testimony was that Thermex never supplied Independent with any technical data about T-600, despite testimony from Thermex representa-

tives that the technical data sheet and warm-up chart are automatically shipped to all Thermex customers and distributors handling their products. According to Kent and Independent, the only technical information that Independent had was an old brochure from Gulf as to NCN–600. Gulf was bought by Thermex in the mid '80's and the product was renamed T–600. This old brochure did not contain any warm-up information for the product. Also, according to Kent and Independent, the brochure was never shown to Walter because his order was placed on the phone.

Also, according to Independent, Ed Walter never made the characteristics of the project known to Kent. Walter never gave Kent a copy of the bid specifications or drawings for the site or any other technical data regarding the project. In February 1988, Kent went to the job site and discussed the blasting problems with Ed Walter, who he viewed as an experienced blaster.

During the trial of this matter, there were a number of possibilities stated as to what caused the problems with the explosives. Thermex opined that the problems came from "dead pressing" and inadequate bore hole size. American Rock opined that the age of the explosives and temperature cycling problems were more likely the cause of the problems on the job site than the way the shots were designed by the blaster.

After these two opposing opinions were placed before the jury, a verdict was returned in favor of American Rock on the theory of breach of an implied contractual duty to provide certain product information. A verdict was also returned in favor of Independent against Ed Walter, personally, for the unpaid purchase price of the explosives. Ed Walter did not appeal that verdict.

Appellant's first and second assignments of error are interrelated and therefore will be discussed together. Respectively, they state:

"The trial court committed reversible error in not granting judgment notwithstanding the verdict in favor of Independent on American Rock's implied contractual duty claim based on the jury's determination that no contract existed between American Rock and Independent.

"The trial court committed reversible error in not granting a directed verdict and judgment notwithstanding the verdict in favor of Independent on American Rock's implied contractual duty claim because American Rock failed to establish a prima facie case of breach of such duty and of causation."

Appellant argues in assignment of error one that appellee had no claim for breach of contract upon which judgment could be entered because no buyer-seller relationship existed between appellee and appellant. Appellant asserts this by alleging that a factual determination was made by the jury that

appellee did not buy the explosives from appellant; Ed Walter purchased the explosives according to appellant based on the finding by the jury regarding the counterclaim against Ed Walter that he personally owed the purchase price for the explosives. Appellant asserts that this factual determination establishes that there was no buyer-seller relationship between appellee and appellant and therefore no contractual privity. Without privity of contract, there can be no recovery on a breach of implied contract claim.

The legal test that must be applied by the trial court in ruling on a motion for directed verdict or a motion for judgment notwithstanding the verdict is adequately explained in *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334. The Ohio Supreme Court states at 275, 74 O.O.2d at 428, 344 N.E.2d at 338:

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions. * * * " (Citations omitted.)

■ It is well established that a contract is binding only upon the parties to the contract and those in privity with them and that an action for breach of contract can only be maintained by the parties to the contract or those deriving rights from the contracting parties. *Ohio Savings Bank v. H.L. Vokes Co.* (1989), 54 Ohio App.3d 68, 560 N.E.2d 1328; *United States Fid. & Guar. Co. v. Truck & Concrete Equip. Co.* (1970), 21 Ohio St.2d 244, 50 O.O.2d 480, 257 N.E.2d 380.

■ In order for a third person to enforce a promise made for his benefit, it must appear that the contract was made and entered into directly or primarily for the benefit of such third person. *Royal Indemn. Co. v. N. Ohio Granite & Stone Co.* (1919), 100 Ohio St. 373, 126 N.E. 405.

■ The evidence adduced from the trial indicates that appellant treated Ed Walter and American Rock as having identical interests. Ed Walter incorporated his business as American Rock Mechanics in July 1987. The project in question was not bid on successfully until October 1987. A letter was placed into evidence from Independent dated June 28, 1988, that unequivocally attributes the balance owed to American Rock and not Ed Walter personally.

The letter is over the signature of appellant's controller and requests prompt payment on American Rock's balance. There was additional evidence placed before the jury that Richard Kent admitted in a written memorandum subsequent to the termination of the relationship that the billing should have been changed to American Rock.

There was a sufficient amount of evidence that the interests of Ed Walter and American Rock were identical.

■ Also, even if appellant's argument was deemed acceptable, American Rock was clearly deriving a benefit from the contract between Ed Walter and Independent and was identified as the entity receiving that benefit. Therefore, American Rock would still have privity as a third-party beneficiary to the contract.

This court cannot conclude that the finding of liability on the part of Ed Walter for the purchase price is tantamount to a factual determination that the buyer-seller relationship existed exclusively between Walter and Independent and not American Rock and Independent. There is a substantial amount of evidence contained in the record to show that American Rock purchased those explosives and not Walter, personally.

Additionally, even if Independent's contention is accepted, American Rock would still have privity and the right to assert a claim as a third-party beneficiary to the contract, their benefit having been specifically identified and derived from the alleged contract between Walter personally and Independent.

Assignment of error one is overruled.

As to the second assignment of error, appellant asserts that the record contains no evidence that it breached its implied contractual obligation to give technical data to appellee at the time that it purchased the T–600 explosives. Appellant takes this position because of its belief that Kent gave Ed Walter any and all product information he had in his possession at all relevant times and, when requested, obtained additional information from Thermex which he sent to Walter. Further, appellant argues that appellee failed to make out a prima facie case that its alleged failure to pass on thermodynamic temperature data with the sale of the T–600 caused the product problems on the work site.

■ The legal tests for both a motion for directed verdict and judgment notwithstanding the verdict are the same, as stated in *Posin, supra*. The evidence must be construed most strongly in favor of appellee. Second, the trial court is required to overrule these motions where there is substantial evidence in the record that supports the non-movant upon which reasonable

minds may reach different conclusions. Third, the trial court is precluded from evaluating either the weight of the evidence or the credibility of the witnesses.

■ Appellee produced an expert witness, Dr. Calvin Konya. Dr. Konya testified that since temperature was a concern then temperature charts and data are normally items that would be given to the blaster. Dr. Konya's testimony was clear that absent the benefit of a temperature chart, the blaster would probably not be in a position to correctly use the T–600 explosives. Dr. Konya also testified that proper functioning temperature is information that the manufacturer has and the user has no way of knowing unless the manufacturer communicates the information for the specific product. Additionally, Dr. Konya testified that the reason for powder distributors is that they are supposed to know what products are used under what conditions so that the blaster/user will have information about the proper use (and properties) of the explosives.

A chemist named Rehman Habib, who was an employee of Independent, also testified during the trial by way of his deposition being read to the jury. His testimony was that it was common knowledge within Independent that temperature was a crucial factor and a problem with water gel explosives such as T–600. Habib also testified that he had a Gulf warm-up chart for NCN–600 but he was not aware that NCN–600 and T–600 were the same product. Habib tested the T–600 and made the statement "so the problem is not the product but cold weather seems to be the culprit." Habib also testified that it was the duty of the marketing department and Independent to distribute product data sheets to the customers.

Richard Kent testified that temperature is a consideration in the use of all explosives. His testimony was that it was common knowledge within Independent that temperature was a crucial factor and a problem with water gel explosives such as T–600.

Kent also testified that he did not discuss temperature and the appropriate temperature for T–600 with Walter. Kent never asked anyone in appellee's employment if they had a temperature chart for T–600. Oddly, Kent further testified that he never asked Thermex for a temperature warm-up chart even though Owens of Thermex testified that Thermex mailed technical data sheets about T–600 directly to the distributors. It was Thermex's policy that all information about T–600 be made available to distributors.

The trial court properly overruled appellant's motion for judgment notwithstanding the verdict. There was a substantial amount of evidence when construed most strongly against appellant, upon which reasonable minds could in fact reach different conclusions. It is not an unreasonable decision, based

on the testimony of Dr. Konya, Habib, Kent, and Walter, that different minds could reach different conclusions about this substantial evidence. There is also enough evidence to conclude that appellant's failure to provide technical data with respect to temperature was the proximate cause of the problems with the T–600. In fact, Habib made the express statement that cold weather was the culprit in the ineffectiveness of the T–600.

On the basis of the test in *Posin,* the trial court properly overruled the motion for judgment notwithstanding the verdict because there was substantial evidence upon which reasonable minds could have reached different conclusions about providing temperature information to appellee and whether temperature caused the problems with the T–600. Appellant's second assignment of error is overruled.

Appellant's third assignment of error states:

"The trial court committed reversible error in instructing the jury that Independent had an implied contractual duty not to withhold certain technical information regarding T–600 for American Rock [*sic*]."

■ The basis for this assigned error is that the trial court somehow misled the jury by instructing them that they could find an implied contractual duty amounting to an affirmative obligation on the part of Independent to give technical data to American Rock.

Appellee argues in response that R.C. 1302.29 provides that other implied warranties may arise from a course of dealing or usage of trade. In June 1986, appellant entered into a service agreement with Ed Walter, wherein it was agreed that appellant would provide certain assistance to Walter in connection with the performance of his blasting work. This assistance was to include advice, suggestions, and recommendations in connection with the performance of blasting work.

The instruction, given by the trial court, was not misleading and did not change the underlying legal principles from contract to negligence.

Appellee was entitled, as a matter of law, to pursue the case on a theory of breach of an implied contractual duty or obligation, the duty being to provide all technical data on the explosives sold to appellee. This duty could arise from an established cause of dealing or usage of trade. It could be implied in the service agreement between the parties, wherein appellant promised to provide assistance to appellee in the form of advice, suggestions, and recommendations in connection with the performance of their blasting work.

This duty, in question, arises out of the contractual relationship between the parties and is not grounded in negligence. If appellant fails to perform its

implied duty or duties under the contract, this failure, while sounding in negligence principles, is a breach of appellant's implied contractual duties.

The trial court's interjection of the word "withheld" in place of the word "concealed" did not alter the underlying legal standard from contract to negligence. The trial court's instructions did not constitute reversible error and were proper instructions regarding how to determine if appellant had breached its implied contractual obligations. Assignment of error three is overruled.

Because of the interrelationship between appellant's fourth and fifth assigned errors, they will be addressed together. Respectively, they state:

"The trial court committed reversible error in refusing to reduce the judgment entered on behalf of American Rock and against Independent from $130,000 to the amount sought in the prayer, $75,000, as required by Civ.R. 54(C).

"The trial court committed reversible error in refusing to reduce the judgment entered for American Rock and against Independent to the amount of damages actually provided at trial."

■ These assigned errors raise the issues of whether the trial court properly reduced the judgment in accordance with Civ.R. 54(C) and whether appellee proved the amount of damages awarded in the verdict.

The trial court prepared an affidavit that explained the manner in which he calculated the judgment reduction. However, this court cannot consider the affidavit or the judgment against Walter, personally, because neither issue is properly before us. There is no further indication that the trial court's affidavit was filed with the Clerk of the Cuyahoga County Common Pleas Court. It is axiomatic that the trial court speaks through its journal. With respect to the judgment against Walter, personally, there was never an appeal filed pertaining to that judgment. Thus, it is not properly before this court for consideration.

Civ.R. 54(C) clearly sets forth that the amount of a judgment is limited to the amount claimed either originally or as amended not later than seven days before trial. It is proper for a court to reduce an award to conform to the demand. *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 29, 20 OBR 213, 215, 485 N.E.2d 704, 706.

Appellant's fourth assignment of error is found to be well taken and the trial court's entry of judgment of $130,000 is reversed.

The case is remanded to the trial court for preparation of a judgment entry reflecting a judgment against appellant and in favor of appellee in the amount of $75,000 pursuant to Civ.R. 54(C).

The judgment is affirmed in part and reversed in part, and the case is remanded for entry of judgment consistent with this opinion.

*Judgment affirmed in part and reversed in part.*

DYKE, P.J., and HARPER, J., concur.

MARGARET K. WEAVER, J., of the Sandusky County Court of Common Pleas, sitting by assignment.