GOOD, Appellant,

v.

KROHN et al.; Lumbermens Mutual Casualty Company, Appellee.

[Cite as *Good v. Krohn,* 151 Ohio App.3d 832, 2002-Ohio-4001.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–02–18.

Decided Aug. 6, 2002.

Walter J. Wolske Jr. and Jason K. Wright, for appellant.

Randy L. Taylor and Victor T. DiMarco; Robert B. Fitzgerald, for appellees.

WALTERS, Judge.

{¶ 1} Although this appeal was originally assigned to our accelerated calendar, we have elected to issue a full written opinion in accordance with Loc.R. 12(5).

{¶ 2} Plaintiff-appellant, Arnold Good ("Good"), brings this appeal from an Allen County Common Pleas Court summary judgment denying him uninsured-underinsured motorist coverage under a policy issued by defendant-appellee,

Lumbermens Mutual Casualty Company ("Lumbermens"), to Good's employer, Tower Automotive, Inc. Because an ambiguity within the definition of who is an insured within the policy requires extension of coverage to company employees and no other provisions preclude coverage under the circumstances of the underlying accident, we must reverse the judgment of the trial court.

{¶ 3} Facts and procedural circumstances relevant to issues raised on appeal are as follows. On Saturday, September 18, 1999, Good was seriously injured when his motorcycle collided with a vehicle operated by Carla Krohn ("Krohn"). Krohn was subsequently cited for failure to yield. At the time of the accident, Good was employed by Tower Automotive, Inc., which was insured under a business auto policy issued by Lumbermens. Good was not, however, operating a company vehicle or acting within the scope of his employment during the accident.

{¶ 4} On March 17, 2000, Good filed suit against Krohn, claiming that he had been injured due to her negligence. He also asserted that Krohn, who was insured through a State Farm policy with liability limits of $100,000, was underinsured at the time of the accident. Good subsequently amended his complaint to include claims seeking declarations as to his right to uninsured-underinsured motorist ("UM/UIM") coverage benefits under policies issued by various insurance companies, including the Lumbermens business auto policy.

{¶ 5} Lumbermens moved for summary judgment on August 15, 2001, arguing that terms within the business auto policy limited coverage to employees acting within the scope of employment. In an amended answer and counterclaim for declaratory judgment, Lumbermens averred that choice-of-law principles mandated the application of Michigan law to the terms of the insurance agreement. After continued briefing, the trial court granted summary judgment in favor of and dismissed all claims against Lumbermens and the other insurance companies on February 7, 2002. Because the entry did not dispose of Good's claims against Krohn, the trial court modified its summary judgment determination pursuant to Civ.R. 60(B) and Civ.R. 54(B) on March 6, 2001, making the entry a final appealable order.

{¶ 6} The instant appeal followed, with Good presenting the following single assignment of error: "The Common Pleas Court of Allen County, Ohio, erred to the substantial prejudice of plaintiff-appellant Arnold Good, as a matter of law, by sustaining defendant-appellee Lumbermens Mutual Casualty Company's motion for summary judgment."

### Summary Judgment Standard

{¶ 7} It is well established under Ohio law that a court may not grant a motion for summary judgment unless the record demonstrates (1) that no

genuine issue of material fact remains to be litigated; (2) that the moving party is entitled to judgment as a matter of law; and (3) that, after construing the evidence most strongly in the nonmovant's favor, reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made.[1] In ruling on a summary judgment motion, the trial court is not permitted to weigh evidence or choose among reasonable inferences; rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the nonmovant.[2] Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the adverse party.[3] Appellate review of summary judgment determinations is conducted on a de novo basis[4]; therefore, this court considers the motion independently and without deference to the trial court's findings.[5]

{¶ 8} In reviewing the record herein, we encounter a disturbing discrepancy between copies of the business auto policy provided by Lumbermens, arguments presented thereon, and representations as to the contents of the policy on appeal. On June 11, 2001, Lumbermens moved the trial court to allow the amendment of its answer, attaching thereto a certified copy of the approximately 145–page business auto policy. Lumbermens included with the amended answer a counterclaim seeking a declaration that any potential UM/UIM coverage afforded under the policy was excluded pursuant to R.C. 3937.18 and conforming policy provisions within the agreement. In support thereof, Lumbermens quoted provisions excluding coverage for bodily injury sustained while occupying a vehicle that is not a covered auto for UM/UIM coverage and reducing coverage by other available first-tier, primary, or excess UM/UIM coverage. Though the location of the quoted language is not immediately apparent from the counterclaim, a review of the attached agreement reveals that the provisions are contained in policy change endorsements number 26 and 27, Ohio UM/UIM coverage forms, comprising the last 11 pages of the insurance agreement.

1. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196.

2. *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653.

3. *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 485, 696 N.E.2d 1044.

4. *Griner v. Minster Bd. of Edn.* (1998), 128 Ohio App.3d 425, 430, 715 N.E.2d 226.

5. *J.A. Industries, Inc. v. All Am. Plastics, Inc.* (1999), 133 Ohio App.3d 76, 82, 726 N.E.2d 1066.

{¶ 9}  On August 15, 2001, Lumbermens moved for summary judgment, attaching thereto what initially appears to be a reproduction of the certified copy of the policy previously submitted with its amended answer and counterclaim: the certification pages are identical in content, date, and signature.  However, the last 11 pages, the Ohio UM/UIM provisions contained in endorsements 26 and 27, were omitted from the policy.  Despite its previous reference to the terms within the Ohio UM/UIM endorsements, Lumbermens proceeds to compare the terminology and rationale of *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*[6] to the general terms of the business auto coverage form without reference to the missing endorsements or explanation as to why they have been omitted or are otherwise inconsequent, concluding that *Scott–Pontzer* is inapplicable because the business auto coverage form includes individuals and employees in its definition of who was an insured and limits coverage to those acting within the scope of employment.

{¶ 10}  In his reply to Lumbermen's motion, Good notes that, although the policy states that it provides $2,000,000 of UM/UIM coverage in the declarations page, contains a blanket UM/UIM coverage section, and includes separate endorsements providing UM/UIM coverage terms for several other states, UM/UIM coverage terms for Ohio were "mysteriously absent" from the policy attached to the summary judgment motion and produced in response to his requests for production.  Apparently unaware of the omission of the Ohio UM/UIM provisions and proceeding upon the belief that the aforementioned documents were complete and accurate duplicates of the certified copy of the policy, Good asserted that the absence of specific UM/UIM terms created an inherent ambiguity necessitating the implication of UM/UIM coverage by law.  Good further argued that because UM/UIM terms were implied by law, liability exclusions contained in other portions of the policy could not be impressed upon those terms.

{¶ 11}  Lumbermens responded to Good's reply brief, maintaining that he had "erroneously claim[ed] that conditions precedent to coverage under the Lumbermens policy do not apply to the UM/UIM coverage of the same policy" and that "[s]uch claim is nonsensical and necessitates clarification."  Despite Good's direct reference to the "mysterious" absence of the Ohio UM/UIM terms and its previous allusion to the terms of the Ohio Uninsured Motorist Coverage provisions, Lumbermens made no attempt to clarify the discrepancy in the documents presented to both Good and the trial court.  Instead, Lumbermens asserted that "[u]nder [Good's] reasoning, everybody would be an insured when *a policy does not contain a section of definitions and conditions of UM/UIM coverage*

---

6.  *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116.

*separate from the liability coverage*[,]" [7] argued that the terms of the liability coverage could be employed to define the limits of *absent* UM/UIM language, and reiterated its contention that *Scott–Pontzer* could not operate to extend coverage under the liability terms of the subject agreement. In a subsequent motion to supplement its response to Good's reply brief, Lumbermens once more directed the trial court's attention to the copy of the agreement provided with its summary judgment motion, while remaining silent as to the missing endorsements.

{¶ 12} Relying upon the definition of who was an insured under the liability terms of the business auto coverage form, the trial court found that the "foundation for the reasoning set forth in *Scott–Pontzer* is absent from the facts of this case[,]" and summarily concluded that "this policy adequately defines 'insured' and specifically excludes coverage for employees who are injured while occupying their own vehicles, as the plaintiff was in this matter." The trial court's reliance upon the general terms within the business auto coverage form without reference to the Ohio UM/UIM endorsements appears to indicate that the trial court, like Good, believed the document provided with Lumbermen's summary judgment motion to be a complete copy of the policy.

{¶ 13} On appeal, Good reiterates his previous arguments, continuing to operate upon the apparent belief that the policy produced in response to his requests for production and attached to the summary judgment motion is a complete and accurate duplicate of the certified copy of the policy. However, Lumbermens goes one step farther than it had in the trial court, and makes the affirmative representation that it "does not dispute that while the declarations of the policy indicates two million dollars of UIM coverage, *the policy does not contain an Ohio UM/UIM form.*"[8] As outlined above, this statement belies the true contents of the policy.

{¶ 14} DR–102(A) directs that a lawyer, whether acting directly or through the actions of another,[9] shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation or any other conduct that is otherwise prejudicial to the administration of justice.[10] The true relation of court and counsel "enjoins upon counsel the duty to exercise diligence and to aid the court rather than by silence mislead the court into commission of error."[11] In light of the increasing

---

7. Emphasis added.

8. Emphasis added.

9. DR 1–102(A)(2).

10. DR 1–102(A)(4) and (5).

11. *State v. Williams* (1977), 51 Ohio St.2d 112, 117, 5 O.O.3d 98, 364 N.E.2d 1364.

.

volume and complexity of modern litigation, this duty is an essential, foundational element to our judicial system; the judiciary must be confident in relying upon the honesty and candor of those practicing before them. The propriety of Lumbermen's representations is questionable and raises grave concerns as to whether its conduct before this court and the trial court constitutes a deliberate, malicious, bad-faith attempt to mislead the judiciary and opposing party or merely a fortuitous incident of inadvertent neglect. Because it appears from the record that the trial court was led to commit this error in reliance upon Lumbermens' representations, on remand, the trial court may wish to consider whether Civ.R. 11 sanctions are appropriate.

### The Lumbermens Business Auto Policy

{¶ 15} Because appellate review of summary judgment determinations is conducted de novo, we proceed to examine the terms of the Ohio UM/UIM provisions contained in the complete version of the Lumbermens agreement. As a preliminary matter, we note that Lumbermens seeks to defend the judgment on grounds other than those specified in the trial court's judgment entry, i.e., that it was entitled to summary judgment for the additional reason that Michigan law governs interpretation of the agreement. However, because Lumbermens failed to set forth a cross-assignment of error for our consideration, the issue is not properly before this court.[12]

{¶ 16} The outcome of the case at bar is dependant upon the interpretation of the terms of the insurance contract and, more specifically, application of the principles of *Scott–Pontzer* and its progeny. It is well settled that an insurance policy is a contract and that the relationship between the insured and the insurer is purely contractual in nature.[13] Insurance coverage is determined by reasonably construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed."[14] "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured."[15] However, where the

---

12. See R.C. 2505.22; App.R. 16(A) and (B); *Zotter v. United Serv. Auto. Assn.* (Nov. 10, 1994), Portage App No. 94–P–0001, 1994 WL 660838.

13. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 472 N.E.2d 1061.

14. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380; *Dealers Dairy Products Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O.2d 424, 164 N.E.2d 745, paragraph one of the syllabus.

15. *King*, supra, at syllabus (citations omitted).

intent of the parties to a contract is evident from the clear and unambiguous language used, a court must not read into the contract a meaning not contemplated or placed there by an act of the parties to the contract.[16]

{¶ 17}  As mentioned previously, the Lumbermens policy contains two separate Ohio UM/UIM coverage provisions: endorsement number 26, effective April 18, 1997, and endorsement number 27, effective October 10, 1999. Because of its effective date, April 18, 1997, and the date of the underlying accident, September 18, 1999, endorsement number 26 controls our analysis (hereinafter "Ohio coverage form"). The Ohio coverage form specifically provides that provisions contained therein control over those provided in the Business Coverage Form, stating: "With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement." Accordingly, the definition of who is an insured for purposes of UM/UIM coverage supplants the definition provided in the Business Coverage Form and must be compared to the named insured under the policy, i.e., Tower Automotive, Inc.

{¶ 18}  While the Business Coverage Form includes references to individuals and employees within its definition of who is an insured, the Ohio coverage form defines who is an insured as follows:

{¶ 19}  "B. WHO IS AN INSURED

{¶ 20}  "1. You.

{¶ 21}  "2. If you are an individual, any 'family member.'

{¶ 22}  "3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.

{¶ 23}  "4. Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.' "

{¶ 24}  Considering an identical definition of who was an insured where, as here, the named insured was a corporation, the Ohio Supreme Court in *Scott–Pontzer* found the term "you" to be ambiguous, stating that "[i]t would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle."[17] As a result, the Court "construed the language most favorably to the insured" and found that the plaintiff's husband was an insured under his

---

**16.**  *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 168, 24 O.O.3d 274, 436 N.E.2d 1347.

**17.**  *Scott–Pontzer*, 85 Ohio St.3d at 664, 710 N.E.2d 1116.

employer's policy.[18]  Confronted with indistinguishable circumstances, we find that the language in the Lumbermens policy concerning the identity of "insureds" to be ambiguous.  Accordingly, we are required to conclude that Good was as an insured under the terms of the policy for purposes of UM/UIM coverage.

{¶ 25}  Having concluded that Good was an insured under the policy at issue, we must now determine whether the circumstances of this accident fall within the coverage provisions provided in the Lumbermens agreement.  Our first inquiry is whether the motorcycle Good was operating is a "covered 'auto.' " The Ohio coverage form does not define "auto."  Deferring to the Business Coverage Form, Section V defines "auto" as "a land motor vehicle, trailer, or semi trailer designed for travel on public roads but does not include 'mobile equipment.' "  As a land motor vehicle designed for travel on public roads which does not fall within the definition of "mobile equipment," a motorcycle would fall within the general definition of "auto."

{¶ 26}  Our next inquiry is whether Good's motorcycle is a "covered 'auto' " for purposes of UM/UIM coverage, which are set forth by numeric symbol "10" in the Business Automobile Coverage Declarations.  The scope of coverage under symbol 10 is defined as "[a]ny owned auto except 1991 United Trailer, S# 01479; 1981 Monon Trl, S# 3223; 1981 Monon Trl, S# 3204; 1972 Trailmobile Trl, S# 1084; 1979 International Truck, S# 13483."[19]  Because Good's ownership of the motorcycle was uncontested and the motorcycle is not a vehicle excluded under the designation, he would be considered an insured at the time of the accident unless excluded by other provisions within the agreement.

{¶ 27}  Lumbermens has argued, based upon language in the definition of who is an insured in the Business Coverage Form, that UM/UIM coverage is limited to those individuals acting within the scope of their employment.  As illustrated above, however, the definition of who is an insured in the Ohio coverage form supplants these terms and does not contain any language limiting coverage to individuals acting within the scope of employment.

{¶ 28}  For their counterclaim, Lumbermens further argued that any potential coverage available to Good was excluded pursuant to the following exclusion contained within the Ohio coverage form:

{¶ 29}  "C. EXCLUSIONS

{¶ 30}  "This insurance does not apply to: * * *

{¶ 31}  "5. 'Bodily injury' sustained by:

---

18.  Id. at 665, 710 N.E.2d 1116.

19.  Emphasis added.

{¶ 32} "a. You while 'occupying' or when struck by any vehicle owned by you that is not a covered 'auto' for Uninsured Motorist Coverage under this Coverage Form[.]"

{¶ 33} As discussed above, Good sustained bodily injury while operating a vehicle owned by him which was not excluded by the covered autos designation. Moreover, a review of the remaining exclusions and provisions within the policy reveals no other language which would operate to exclude coverage under the circumstances presented herein. Therefore, the terms of the Lumbermens policy entitled Good to coverage at the time and under the circumstances of the underlying accident. Accordingly, Good's assignment of error is sustained.

{¶ 34} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of trial court is hereby reversed and remanded for further proceedings in accordance with this opinion.

Judgment reversed
and cause remanded.

SHAW, P.J., and THOMAS F. BRYANT, J., concur.