**NORCOLD, INC., Appellant,**

v.

**GATEWAY SUPPLY COMPANY et al., Appellees.**

[Cite as *Norcold, Inc. v. Gateway Supply Co.*, 154 Ohio App.3d 594, 2003-Ohio-4252.]

Court of Appeals of Ohio,
Third District, Shelby County.

No. 17–03–02.

Decided Aug. 11, 2003.

Charles H. Brown III and James E. Wynee, for appellant.

Stephen V. Freeze, for appellee Gateway Supply Company.

Terence L. Fague and David P. Pierce, for appellee Dayco Products, Inc.

WALTERS, Judge.

{¶ 1} Plaintiff-appellant, Norcold, Inc. ("Norcold"), appeals separate Shelby County Common Pleas Court decisions granting summary judgment in favor of defendants-appellants, Gateway Supply Company, Inc. ("Gateway") and Dayco Products, Inc. ("Dayco"). Because claims for breach of an express written warranty do not require reliance on the part of the buyer, we must reverse the trial court's dismissal of Norcold's express-warranty claims against Gateway. With regard to Norcold's claims for breach of the implied warranties of merchantability and fitness for a particular purpose, no warranty of merchantability exists because the part in question was a newly constructed component and no average or usual standards for determining ordinary performance or quality could be determined; however, questions of material fact do remain as to whether Norcold relied on Gateway to supply parts fit for Norcold's particular purpose. Additionally, because a commercial purchaser of a defective product cannot maintain a claim for purely economic loss under common-law tort theories of recovery and because Norcold failed to plead a contract cause of action, its claims against Dayco are barred as a matter of law.

{¶ 2} Norcold engages in the production and sale of refrigerators to manufacturers of recreational vehicles and camping trailers. For several years, Gateway has acted as a distributor of pipes, fittings, and valves to Norcold for use in refrigerator assembly. In 1992, Norcold representatives approached Gateway to discuss combining two pre-existing parts used to power Norcold's refrigerators. This combined unit would become known as a tap tee, which is used to carry flammable gas. Thereafter, Gateway consulted with Dayco to manufacture the part.

{¶ 3} Subsequently, Dayco delivered the parts to Gateway, which then distributed them to Norcold, pursuant to Norcold's purchase orders. The purchase orders afforded Norcold the ability to test each tap tee prior to final assembly, and each part was tested twice before being integrated into the refrigerators. In summer 1999, Norcold found that the tap tees were subject to stress corrosion cracking and thus potentially hazardous. Accordingly, Norcold began a recall campaign of its mobile refrigerator units and allegedly suffered damages in excess of $25,000.

{¶ 4} As a result, Norcold brought suit against Gateway, alleging breach of contract and breach of express and implied warranties. Gateway then filed a third-party complaint against Dayco, claiming that it was entitled to indemnifica-

tion and damages for breach of contract and express and implied warranties. Thereafter, Norcold amended its complaint to include Dayco as a defendant, asserting breach of express and implied warranties. In response to the amended complaint, Gateway counterclaimed against Norcold for breach of contract, payment of an existing account, and unjust enrichment. Gateway also filed a cross-claim against Dayco, alleging breach of contract and unjust enrichment. Dayco responded to the amended complaint and cross-claim, maintaining that it was entitled to indemnification or contribution in the event it was liable to either Norcold or Gateway.

{¶ 5} After completing extensive discovery, Gateway moved for summary judgment against Norcold and Dayco, and Dayco moved for summary judgment against Norcold and Gateway. In a May 20, 2002 judgment entry, the trial court granted Gateway's motion for summary judgment in full, thus dismissing all claims of both Norcold and Dayco. In a separate judgment entry filed the same day, the trial court denied Dayco's motion for summary judgment against Norcold.

{¶ 6} Prior to the court's decisions on the summary judgment motions, Norcold moved for leave to file a second amended complaint, stating that it wanted to separate the claims against Gateway, "which are contractual in nature, from those against Dayco * * *, which are based in tort." The motion was initially denied; however, upon Norcold's motion to reconsider and after the claims against Gateway were dismissed, the trial court granted Norcold leave to amend its complaint for a second time. Therein, Norcold realleged claims against both Gateway and Dayco. Gateway and Dayco both responded with the same claims as argued in response to Norcold's first amended complaint.

{¶ 7} On September 4, 2002, pursuant to an agreed judgment entry, all claims asserted by Norcold against Gateway in the second amended complaint were dismissed in accordance with the trial court's prior grant of summary judgment. Thereafter, Dayco again moved for summary judgment against Norcold. The trial court granted the motion on December 13, 2002, finding that absent privity of contract, Ohio law does not provide a common-law remedy in tort to a commercial purchaser of a defective product for purely economic loss. Following the court's entry, Norcold filed a motion for modification or reconsideration of the court's grant of summary judgment, which was denied.

{¶ 8} From the trial court's May 20, 2002 grant of summary judgment to Gateway and December 13, 2002 grant of summary judgment to Dayco, Norcold appeals, asserting six assignments of error for our review. For purposes of brevity and clarity, we will combine our discussion of Norcold's third and fourth assignments of error. Because this appeal arises from summary judgment determinations, we will begin by setting forth our standard of review.

## Standard of Review

{¶ 9} Under Ohio law, a court may not grant a motion for summary judgment unless the record demonstrates (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that after considering the evidence most strongly in the nonmovant's favor, reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made.[1] In ruling on a summary judgment motion, the trial court is not permitted to weigh evidence or choose among reasonable inferences; rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the nonmovant.[2] Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the adverse party.[3] Appellate review of summary judgment determinations is conducted on a de novo basis;[4] therefore, this court considers the motion independently and without deference to the trial court's findings.[5]

## Norcold's Claims Against Gateway

## Assignment of Error I

"The trial court erred in granting Appellee Gateway's Motion for Summary Judgment as to Count I of Appellant Norcold's first amended complaint by finding that no genuine issue of material fact exists for resolution by a jury regarding Norcold's reliance on express warranties as a basis of its bargain with Gateway."

{¶ 10} In its first assignment of error, Norcold contends that the trial court made impermissible credibility determinations as to whether Norcold relied upon Gateway's express warranties concerning the tap tee. Neither party disputes that affirmations of fact or promise were made by Gateway to Norcold within the purchase orders for the tap tees; therefore, the only issue to be

---

1. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196.

2. *Good v. Krohn*, 151 Ohio App.3d 832, 2002-Ohio-4001, 786 N.E.2d 480, at ¶ 7, citing *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653.

3. *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 485, 696 N.E.2d 1044.

4. *Griner v. Minster Bd. of Edn.* (1998), 128 Ohio App.3d 425, 430, 715 N.E.2d 226.

5. *J.A. Industries, Inc. v. All Am. Plastics, Inc.* (1999), 133 Ohio App.3d 76, 82, 726 N.E.2d 1066.

decided by this court is whether the trial court erred in finding that the language therein was not part of the basis of the bargain between the parties.

{¶ 11} In purchasing the tap tees from Gateway, Norcold furnished purchase orders containing the following applicable language:

"1.  ACCEPTANCE AGREEMENT.  Seller's commencement of work on the goods subject to this purchase order or shipment of such goods, whichever occurs first, shall be deemed an effective mode of acceptance of this purchase order.  Any acceptance of this purchase order is limited to acceptance of the express terms contained on the front and back hereof.

"* * *

"5.  WARRANTY. Seller expressly warrants that all goods or services furnished under this agreement shall conform to all specifications and appropriate standards, will be new, and will be free from defects in material or workmanship.  * * * Seller warrants that all goods or services furnished hereunder will be merchantable, and will be safe and appropriate for the purpose for which goods or services of that kind are normally used.  If seller knows or has reason to know the particular purpose for which purchaser intends to use the goods or services, seller warrants that such goods or services will fit for such particular purpose.  Seller warrants that goods or services furnished will conform in all respects to samples, inspection, test, acceptance or use of the goods or services furnished hereunder.  Such warranties shall survive inspections, tests, acceptance and use.  Seller's warranty shall run to purchaser, its successors, assigns and customers, and users of products sold by purchaser.  Seller agrees to replace or correct defects of any goods or services not conforming to the foregoing warranty promptly, without expense to purchaser, when notified of such nonconformity by purchaser, provided purchaser elects to provide seller with the opportunity to do so.  In the event of failure of seller to correct defects in or replace nonconforming goods or services promptly, purchaser, after reasonable notice to seller, may make such corrections or replace such goods and services and charge seller for the cost by purchaser in doing so.

"* * *

"17.  ENTIRE AGREEMENT.  This purchase order, and any documents referred to on the face hereof, constitute the entire agreement between the parties."

{¶ 12} With respect to express warranties, R.C. 1302.26 (UCC 2–313) provides:

"(A) Express warranties by the seller are created as follows:

"(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"* * *

"(B) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

{¶ 13} The trial court herein determined that the written warranties by Gateway did not become part of the basis of the bargain between the parties because Norcold did not actually rely on Gateway's representations. In doing so, the trial court relied upon *Price Bros. Co. v. Philadelphia Gear Corp.*, which stated:

"In order to determine whether the pre-contract statements * * * were in fact a basis of the bargain and thus an express warranty, or whether they were merely a seller's 'puffing,' the court should consider the circumstances surrounding the transaction, the reasonableness of the buyer in believing the seller, and the reliance placed on the seller's statements by the buyer."[6]

{¶ 14} The trial court's reliance thereon, however, is misplaced. *Price Bros.* is distinguishable from the case at bar particularly because therein the court was determining whether precontract statements made by the seller, sales literature, and a journal article referring to the goods sold constituted affirmations of fact or promise. In other words, the court was merely "differentiating affirmations of fact from statements of opinion."[7] In contrast, the statements in this case were not precontractual representations but were integrated terms within the parties' written agreement. The parties do not dispute whether the affirmations within the purchase orders constitute statements of fact or promise; their arguments entail whether the statements or affirmations were part of the basis of the bargain.

{¶ 15} Because "basis of the bargain" is not a defined term, the language has caused significant legal confusion with regard to whether a buyer's reliance upon express warranty language is a necessary part of determining the enforcement thereof. Prior to the adoption of the Uniform Commercial Code ("UCC") in Ohio, reliance was a key inquiry as to the enforceability of an express warranty: "An express warranty is an affirmation of fact by the seller as to a product or commodity to induce the purchase thereof, on which affirmation the buyer relies in making the purchase."[8] Notably, some Ohio appellate courts have continued to

---

6. (Footnote omitted.) *Price Bros. Co. v. Philadelphia Gear Co.* (1981), 649 F.2d 416, 422.

7. *Pratt v. Bowling* (Sept. 14, 1983), Clinton App. No. CA 489, 1983 WL 4474. See, also, *Slyman v. Pickwick Farms* (1984), 15 Ohio App.3d 25, 15 OBR 47, 472 N.E.2d 380.

8. *Rogers v. Toni Permanent Co.* (1958), 167 Ohio St. 244, 4 O.O.2d 291, 147 N.E.2d 612, paragraph two of the syllabus.

evaluate the enforceability of express warranties by requiring the buyer's reliance thereon, despite the absence of such language in R.C. 1302.26.[9] However, these cases deal with affirmations of fact or promise during contract negotiation and not those contained in a written agreement. The parties cite no Ohio cases, nor has this court uncovered any, in which Ohio courts have grappled with the question of reliance in the context of an express written warranty.

{¶ 16} In order for this court to shed light on the meaning of "basis of the bargain" in the context of written affirmations of fact or promise in a valid contract, and any concomitant reliance requirement, we must turn to the Official Comments of the UCC for guidance. Although a review of UCC 2–313's comments does not definitively answer whether reliance remains a necessary element for enforcement of an express warranty, the comments do seem to indicate that reliance is not required in the context of this case. Comment 3 states:

> "The present section deals with affirmations of fact by the seller, descriptions of the goods or exhibitions of samples, *exactly as any other part of a negotiation which ends in a contract is dealt with.* No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact."[10] (Emphasis added.)

{¶ 17} Thus, Comment 3 indicates that UCC 2–313 is relevant to the question of whether an express warranty has been *created*, and the basis-of-the-bargain rule is not applicable to situations where written warranties are clear and express. A decisive majority of courts that have considered this issue have reached the similar conclusion that reliance is not an element in a claim for breach of an express written warranty.[11]

---

9. See, e.g., *Pratt*, supra, fn. 6.

10. Official Comment 3 to UCC 2–313 (R.C. 1302.26).

11. See, e.g., *S. Broadcast Group, LLC v. Gem Broadcasting, Inc.* (M.D.Florida 2001), 145 F.Supp.2d 1316, 1321, 1324 (Florida law); *Continental Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.* (C.A.7 1985), 755 F.2d 87, 90 fn. 2 (Illinois law); *Wikoff v. Vanderveld* (C.A.7 1990), 897 F.2d 232, 240–241 (Illinois law); *Giuffrida v. Am. Family Brands, Inc.* (E.D.Pa. Apr.23, 1998), Nos. CIV. A. 96–7062, 96–7256, 1998 WL 196402 (Pennsylvania law); *Pegasus Mgmt. Co., Inc. v. Lyssa, Inc.* (D.Mass.1998), 995 F.Supp. 29, 39 (Connecticut law); *Glacier Gen. Assur. Co. v. Cas. Indemn. Exchange.* (D.Mont.1977), 435 F.Supp. 855, 860–861 (Montana law); *CBS Inc. v. Ziff–Davis Publishing Co.* (1990), 75 N.Y.2d 496, 554 N.Y.S.2d 449, 553

{¶ 18} Express warranties are "as much a part of the contract as any other part, and the right to damages on the breach depends on nothing more than the breach of warranty."[12] In other words,

"[a] warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past."[13]

{¶ 19} Accordingly, because the warranties in this case were part of a written contract, we find that enforcement thereof is not dependant upon any reliance by Norcold. Therefore, we must sustain Norcold's first assignment of error.

## Assignment of Error II

"The trial court erred in granting Gateway's motion for summary judgment as to Norcold's claim for breach of an implied warranty of merchantability by using a standard outside Ohio R.C. § 1302.27."

{¶ 20} Norcold alleges that Gateway breached the implied warranty of merchantability because the tap tee could not and did not pass without objection in the trade under the contract description and was not fit for its ordinary use. Norcold further argues that the trial court improperly considered that the tap tee was a newly constructed part in determining whether Gateway breached the implied warranty of merchantability.

{¶ 21} R.C. 1302.27 states the following with regard to the implied warranty of merchantability:

"(A) Unless excluded or modified as provided in section 1302.29 of the Revised Code, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *

"(B) Goods to be merchantable must be at least such as:

---

N.E.2d 997, 1000–1001 (New York law); *C.R. Anthony Co. v. Loretto Mall Partners* (1991), 112 N.M. 504, 817 P.2d 238, 246 (New Mexico law); *Essex Group, Inc. v. Nill* (Ind.App.1992), 594 N.E.2d 503, 506–507 (Indiana law); *Wechsler v. Long Island Rehab. Ctr. of Nassau, Inc.* (Mass.Super. Sept. 4, 1996), No. CIV. A. 93–6946–B, 1996 WL 590679 (Massachusetts law).

**12.** *Shambaugh v. Lindsay* (Ind.App.1983), 445 N.E.2d 124, 126–127, quoting *Glacier Gen. Assur. Co.*, 435 F.Supp. at 860–861; *Lennar Homes, Inc. v. Masonite Corp.* (E.D.La.1998), 32 F.Supp.2d 396, 399; *S. Broadcast Group, LLC*, 145 F.Supp.2d at 1322, quoting *CBS, Inc.*, 75 N.Y.2d 496, 554 N.Y.S.2d 449, 553 N.E.2d at 1001.

**13.** *Metro. Coal Co. v. Howard* (C.A.2 1946), 155 F.2d 780, 784; *Shambaugh*, 445 N.E.2d at 127.

"(1) pass without objection in the trade under the contract description; and

"* * *

"(3) are fit for the ordinary purposes for which such goods are used[.]"

■ {¶ 22} In other words, this warranty is breached when goods are not of an acceptable quality when compared to that generally acceptable in the trade for goods of the kind.[14]

■ {¶ 23} Norcold approached Gateway with a specific request to combine two pre-existing parts into a single component. Norcold negotiated with Gateway and provided sketches of the proposed part so that Gateway could then ascertain whether the part could be manufactured. The uncontroverted evidence reveals that the tap tee was a newly created component made especially for Norcold. Under these circumstances, "no average or usual standards for determining ordinary performance or quality for the components can be determined" because the parts had never previously been manufactured.[15] Additionally, there was no showing that the parts were not "such as pass without objection in the trade under the contract description," for there was no trade in goods of the same kind.[16]

{¶ 24} Accordingly, we find that the trial court did not err in considering that the tap tee was a newly constructed part, as that is directly relevant to R.C. 1302.27(B)(1) and (3). Thus, we overrule Norcold's second assignment of error.

## Assignment of Error III

"The trial court erred in granting Gateway's motion for summary judgment on Norcold's claim for breach of an implied warranty of fitness for a particular purpose by imposing a standard outside Ohio R.C. 1302.28."

## Assignment of Error IV

"The trial court erred in granting Gateway's motion for summary judgment as to count III of Norcold's first amended complaint by weighing the evidence and by determining that any reliance by Norcold upon Gateway to furnish goods fit for a particular purpose was unreasonable."

■ {¶ 25} For its third and fourth assignments of error, Norcold claims that the trial court erred by using standards outside R.C. 1302.28 and by improperly

---

14. R.C. 1302.27, Official Comment 2 to UCC 2–314; *Price Bros. Co.*, 649 F.2d at 424.

15. See *Price Bros. Co.*, 649 F.2d at 424; *Binks Mfg. Co. v. Natl.Presto Industries, Inc.* (1983), 709 F.2d 1109, 1122.

16. *Axion Corp. v. G.D.C. Leasing Corp.* (1971), 359 Mass. 474, 269 N.E.2d 664, 670.

weighing the evidence in determining whether Norcold relied on Gateway to furnish goods fit for its particular purpose.

{¶ 26} With respect to implied warranties of fitness for a particular purpose, R.C. 1302.28 provides:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is * * * an implied warranty that the goods shall be fit for such purpose."

{¶ 27} Thus, the test for finding an implied warranty of fitness for a particular purpose requires (1) that the seller knew of the buyer's particular purpose, (2) that the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish or select the appropriate goods, and (3) that the buyer relied upon the seller's skill or judgment.[17] Additionally, the buyer's expertise or potentially superior knowledge with regard to the goods sold is a relevant factor to weigh into the reliance analysis.[18]

{¶ 28} Questions of material fact remain as to whether Norcold relied upon Gateway to furnish appropriate goods. Testimony indicates that Gateway was aware that the tap tees would be used in a propane gas line in Norcold's refrigerators. Gateway was approached by Norcold representatives, who inquired as to whether a part could be manufactured for this specific application. Gateway then sought out a manufacturer, Dayco, to produce the part. Not until the tap tees began to malfunction did Norcold ever communicate with Dayco. Additionally, while Norcold did provide sketches of the proposed tap tee and the size necessary to accommodate their use, deposition testimony from Norcold employees and an affidavit from a former president of Norcold allege that they were relying on Gateway both to assure Norcold that the tap tees could be manufactured and to provide the requested component. In addition, the trial court precluded Norcold's claim for breach of the implied warranty for a particular purpose because of Norcold's alleged superior expertise and knowledge concerning the tap tee; however, in light of the evidence and in taking all reasonable inferences in Norcold's favor, we find that the trial court improperly weighed the evidence when making this determination. Thus, sufficient evidence establishes that material questions of fact remain and that reasonable minds

---

17. *Acme Steak Co. v. Great Lakes Mechanical Co.* (Sept. 29, 2000) Mahoning App. Nos. 98–C.A.–146 and 98–C.A.–243, 2000 WL 1506199, citing *Hollingsworth v. Software House, Inc.* (1986), 32 Ohio App.3d 61, 65, 513 N.E.2d 1372.

18. *Jatco, Inc. v. Charter Air Ctr., Inc.* (S.D.Ohio 1981), 527 F.Supp. 314, 319–320; *Price Bros. Co.*, 649 F.2d at 423–424.

could come to different conclusions as to whether Norcold relied upon Gateway to furnish appropriate goods.

{¶ 29} For these reasons, we sustain Norcold's third and fourth assignments of error.

Norcold's Claims Against Dayco

Assignment of Error V

"The trial court erred in granting Appellee Dayco's motion for summary judgment as to Count V of Appellant Norcold's second amended complaint by determining that Ohio does not provide a common law remedy to a commercial purchaser of a defective product for commercial loss."

{¶ 30} Norcold asserts in its fifth assignment of error that the trial court erred in finding as a matter of law that absent privity of contract, a commercial purchaser of a defective product cannot maintain a claim for purely economic loss under common-law tort theories of recovery. Based upon the following, however, we affirm the judgment of the trial court.

{¶ 31} In *Iacono v. Anderson Concrete Corp.*, the Ohio Supreme Court held that a homeowner could sue in tort under implied-warranty theories to recover property damages against the supplier of defective driveway material with whom the plaintiff was not in privity of contract.[19] Thereafter, in *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, the court noted that "while the damages sustained in *Iacono* were described as 'property' damage, they were in fact merely defects in the product itself which reduced the product's value, *i.e.*, economic damages."[20] Following these decisions, the court, in *La Puma v. Collinwood Concrete*, reaffirmed the existence of a noncommercial consumer plaintiff's common-law products liability claim, based upon implied-warranty theory, to recover purely economic damages from a product supplier with whom the plaintiff was not in privity.[21]

{¶ 32} The issue before this court, however, is whether the same cause of action should be available to commercial buyers of products who claim purely economic loss from product suppliers with whom they are not in privity. The Ninth and Tenth Appellate Districts in Ohio have reached contrary results in

**19.** *Iacono v. Anderson Concrete Corp.* (1975), 42 Ohio St.2d 88, 93, 71 O.O.2d 66, 326 N.E.2d 267.

**20.** *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 49, 537 N.E.2d 624.

**21.** *LaPuma v. Collinwood Concrete* (1996), 75 Ohio St.3d 64, 67, 661 N.E.2d 714. See, also, *Midwest Ford, Inc. v. C.T. Taylor Co., Inc.* (1997), 118 Ohio App.3d 798, 802, 694 N.E.2d 114.

deciding precisely this issue.[22] However, based upon the following, we find the Ninth District's rationale in *Midwest Ford, Inc. v. C.T. Taylor Co., Inc.* to be persuasive in this case.

{¶ 33} The Supreme Court, in *Chemtrol,* explained that an action in tort for breach of express or implied warranty is synonymous with strict liability.[23] Typically, the rights and duties of a buyer and seller are determined by the law of sales, or the UCC.[24] In contrast, "strict liability evolved as a judicial response to inadequacies in sales law with respect to consumers who sustained physical injuries from defective goods made or distributed by remote parties in the marketing chain."[25] Thus, in order to determine whether a commercial buyer may recover economic loss, we must look to the policy considerations underlying strict liability and those underlying the UCC, which include the relative bargaining power of the parties and the allocation of loss to the better risk-bearer in a modern marketing system.[26]

{¶ 34} Both Norcold and Dayco have, at the very least, comparable bargaining power as commercial entities.[27] Furthermore, perfect parity is not necessary to a determination that parties have substantially equal bargaining positions.[28] Additionally, Norcold is as well situated as Dayco to assess the impact of economic loss.[29] Indeed, a commercial buyer, such as Norcold, may be better situated than the manufacturer to factor into its price the risk of loss caused by the purchase of a defective product.[30] Permitting suit against Dayco for strict liability for purely economic damages potentially shifts costs to Dayco's other customers, be they noncommercial buyers or commercial buyers who manage contractual economic risks more conservatively than Norcold.[31]

---

22.  See *Midwest Ford, Inc.,* 118 Ohio App.3d 798, 694 N.E.2d 114; *Ohio Dept. of Adm. Serv. v. Robert P. Madison Internatl., Inc.* (2000), 138 Ohio App.3d 388, 741 N.E.2d 551.

23.  *Chemtrol,* 42 Ohio St.3d at 49, 537 N.E.2d 624. See, also, *Midwest Ford, Inc.,* 118 Ohio App.3d at 803–805, 694 N.E.2d 114; *Bobb Forest Prod., Inc. v. Morbark Indust., Inc.,* 151 Ohio App.3d 63, 2002-Ohio-5370, 783 N.E.2d 560, ¶ 56.

24.  *Midwest Ford, Inc.,* 118 Ohio App.3d at 804, 694 N.E.2d 114, quoting *Spring Motors Distrib. v. Ford Motor Co.* (1985), 98 N.J. 555, 575–577, 489 A.2d 660.

25.  Id.

26.  Id.

27.  Id.

28.  Id.

29.  Id.

30.  Id.

31.  Id.

{¶ 35} Additionally, the policies of product liability law as articulated by Ohio courts would not be served by extending a strict-liability cause of action to commercial plaintiffs. The Ohio Supreme Court has explained the policy considerations for applying strict liability in cases of defective products, including that human life and safety are promoted by subjecting manufacturers of defective products to strict liability, that manufacturers are in a better position than those injured to internalize and redistribute the cost of injuries, and that strict liability relieves the "average consumer" of the burden of proving negligence.[32] None of these policy considerations are applicable to a claim by a commercial buyer for purely economic losses.[33]

{¶ 36} Therefore, for the foregoing reasons, we hold that absent privity of contract, a commercial purchaser of a defective product cannot maintain a claim for purely economic loss under common-law tort theories of recovery. Accordingly, Norcold's claim against Dayco under implied-warranty theories in tort is barred as a matter of law, and Norcold's fifth assignment of error is hereby overruled.

## Assignment of Error VI

"The trial court erred in denying Norcold's motion for modification and/or reconsideration of the decision and order entry granting summary judgment in favor of Dayco because Norcold's second amended complaint was an adequately 'short and plain statement of (its) claim' under Civil Rule 8(A) to allow it to recover under Ohio's common law for consequential damages due to a breach of express and implied warranties."

{¶ 37} For its final assignment of error, Norcold maintains that the trial court erred in limiting its cause of action against Dayco to implied-warranty theories in tort. Norcold claims that it sufficiently pled claims under both implied warranty in tort and contract. However, based upon the pleadings, we affirm the determination of the trial court.

{¶ 38} In order to maintain a contract-based claim for breach of implied warranties there must be a contractual relationship, or privity of contract, between the parties.[34] There is no dispute that Norcold and Dayco did not have

---

32. *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609, 621, 653 N.E.2d 661.

33. *Midwest Ford, Inc.*, 118 Ohio App.3d at 805, 694 N.E.2d 114.

34. *Lawyers Cooperative Publishing, Co. v. Muething* (1992), 65 Ohio St.3d 273, 277, 603 N.E.2d 969; *Bobb Forest Prod., Inc. v. Morbark Industries, Inc.*, 151 Ohio App.3d 63, 2002-Ohio-5370,

a contractual relationship. However, courts have recognized that privity will lie between a manufacturer and an ultimate consumer if either the manufacturer is so involved in the sales transaction that the distributor merely becomes the manufacturer's agent or if the consumer is an intended third-party beneficiary to a contract.[35]

{¶ 39} Keeping these principles in mind, we now discuss whether Norcold sufficiently pled a claim against Dayco for breach of implied warranty in contract. Civ.R. 8(A) requires "only that a pleading contain a short and plain statement of the circumstances entitling the party to relief. A party is not required to plead the legal theory of recovery or the consequences which naturally flow by operation of law from the legal relationships of the parties."[36] In other words, it is sufficient if a plaintiff sets forth facts that, if proven, would establish the claim for relief.[37] The purpose of including sufficient operative facts in a complaint is to provide fair notice to the defendant.[38]

{¶ 40} Norcold's second amended complaint does not allege that it had a contractual relationship with Dayco. Additionally, the complaint fails to factually describe the requisite relationship between Norcold and Dayco to establish privity between them. It is noteworthy that in its motion to reconsider the trial court's denial of its request to amend its complaint, Norcold conceded that no privity existed between it and Dayco. Moreover, Norcold's motion for leave to file a second amended complaint stated that the purpose for amending the complaint was to "separate the claims against * * * Gateway * * *, which are contractual in nature, from those against Dayco * * *, which are based in tort." Accordingly, we find that the trial court did not err in limiting Norcold's cause of action to tort theories of recovery.

{¶ 41} Norcold's sixth assignment of error is overruled.

{¶ 42} Having found prejudicial error to appellant in the particulars assigned and argued, we reverse the judgment of the trial court insofar as it relates to

---

783 N.E.2d 560, ¶ 56, citing *U.S. Fid. & Guar. Co. v. Truck & Concrete Equip. Co.* (1970), 21 Ohio St.2d 244, 257 N.E.2d 380.

35. *Bobb Forest Prod., Inc.*, 151 Ohio App.3d at 83–84, 783 N.E.2d 560, ¶¶ 57–58; See, also, *Mettler–Toledo, Inc. v. Wysong & Miles Co.* (Nov. 9, 1999), 10th Dist. No. 98AP–1462, 1999 WL 1009721; *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.* (1992), 80 Ohio App.3d 53, 608 N.E.2d 830.

36. *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 526, 639 N.E.2d 771.

37. Id.

38. *Fed. Land & Bank Assn. v. Walton* (June 16, 1995), Wyandot App. No. 16–94–9, 1995 WL 359856, citing Civ.R. 8(A) and *DeVore v. Mut. of Omaha Ins. Co.* (1972), 32 Ohio App.2d 36, 61 O.O.2d 21, 288 N.E.2d 202.

issues concerning express warranty and the implied warranty of fitness for a particular purpose and remand the matter for further proceedings in accordance with this opinion.

Judgment affirmed in part,
reversed in part
and cause remanded.

SHAW and CUPP, JJ., concur.