SOCIETY NATIONAL BANK *v.* PEMBERTON ET AL.*

(No. 78 CV 2221—Decided October 30, 1979.)

Akron Municipal Court.

*Mr. Stanley Green,* for plaintiff.
*Mr. Gregory R. Sain,* for defendant.
*Mr. William F. Stamm,* for third-party defendant.

COLOPY, J.  This matter came on for hearing on April 30, 1979. The complaint seeks recovery of $2,503.39, the amount owing to the plaintiff on a promissory note executed by the defendants. The proceeds of this note were used by defendant Ralph Pemberton to purchase a used truck from Chapel Hill Dodge, the third-party defendant. The plaintiff acknowledged at trial that any defenses available against Chapel Hill Dodge would also be available against the plaintiff.

The facts giving rise to this cause of action are as follows: Defendant Ralph Pemberton desired to supplement his income as a landscape laborer by plowing snow during the winter of 1976-77. Accordingly, in September of 1976 he visited Chapel Hill Dodge and informed the sales manager,

* This decision was affirmed June 25, 1980, by the Ninth District Court of Appeals, case No. 9502.

Mr. Green, that he wished to purchase a used truck which could be used to plow snow on a commercial basis.

Mr. Green, who testified that he had 30 years of experience in selling vehicles, showed Pemberton a two-year old, 4-wheel drive pick-up truck which showed 20,000 miles on the odometer. The testimony disclosed that Green advised Pemberton that this truck would be just right for the purpose of commercial snow plowing; that it was a one-owner vehicle; and that it was in good shape after having been serviced and inspected by a Chapel Hill Dodge mechanic who specialized in the servicing of used trucks for resale. Pemberton drove the truck around the parking lot of Chapel Hill Dodge, raised and lowered the snow plow blade, and decided to make the purchase.

Pemberton executed a sales contract which contained a clause in very fine print stating that all used cars and trucks are sold "as is" and without any express or implied warranties. Chapel Hill Dodge also required that Pemberton sign a warranty document which conspicuously disclaimed any warranties on the subject vehicle. The defendant stated he only remembered signing several papers and did not understand the significance of these provisions.

Also testifying was the previous owner of the truck, a construction corporation that appeared in court through its president. He testified that after two years of very hard use, he knew from experience that the truck would soon require major part replacements. Therefore, he traded it in towards a new truck which was also purchased from Chapel Hill Dodge.

Approximately one month after the defendant's purchase of this truck, the brakes failed while defendant was crossing a large intersection. Pemberton was forced to lower the snow blade for some distance in order to stop the vehicle. Later, over a 4-month period various other components failed. The drive shafts, starter and transmission all required repair or replacement. The carburetor failed to function properly; both inner and outer axles required replacement; the electrical system caught fire; finally, the snow blade would not raise or lower.

Mr. Pemberton plowed the first snowfall in November 1976, for his various contract customers. He was unable to plow during the remainder of the winter due to the in-

numerable mechanical failures. However, the truck was used for transportation to and from work, a distance of 60 miles per day, despite its total unfitness for the purpose for which it was purchased, commercial snow plowing.

The issue in this case is whether the express oral warranties as to fitness for a particular purpose were effectively disclaimed in the subsequent written contract.

An express warranty is created by the seller whenever any affirmation of fact or promise relating to the goods becomes part of the basis of the bargain between the parties. R. C. 1302.26(A)(1); U.C.C. 2-313(1)(a). The "basis of the bargain" test focuses upon the description or affirmation which clearly goes to the essence of the basic assumption of the bargain between the parties. *Alan Wood Steel Co.* v. *Capital Equipment Enterprises, Inc.* (1976), 39 Ill. App. 3d 48, 349 N.E. 2d 627. The above interpretation is supported by Official Comment 4 to U.C.C. 2-313: "***the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell***."

It seems clear that in this case Chapel Hill Dodge agreed to sell, and defendant Pemberton agreed to buy, a truck which could be used for commercial snow plowing. This was the basis of the bargain between the parties. The seller in this instance clearly went beyond what is known as "puffing" or mere "sales talk." The defendant was told unequivocally and specifically by Chapel Hill's salesman that this truck was "just right for plowing snow." Such statements by salesmen can become a sufficient basis on which to find the creation of express warranties. *Acme Pump Co.* v. *National Cash Register Co.* (1974), 32 Conn. Supp. 69, 337 A. 2d 672.

Once made, any fact which is to take such affirmations out of the parties' agreement requires clear affirmative proof. Official Comment 3 to R. C. 1302.26; U.C.C. 2-313. The plaintiff and the third-party defendant argue that all warranties, express or implied, were disclaimed in the sales agreement. The general disclaimer clause in the warranty agreement was conspicuous and therefore effective to disclaim the implied warranty of fitness for a particular purpose. R. C. 1302.29(B); U.C.C. 2-316(2). The "as is" clause in the sales agreement was sufficient to disclaim all implied warranties. R. C. 1302.29(C)(1); U.C.C. 2-316(3)(a). In the in-

stant case, however, express warranties were given as to the condition and performance ability of the subject matter of the sales agreement. These are in addition to those warranties implied by law, and are not so easily withdrawn from the parties' agreement.

Because sales practices such as those engaged in by the third-party defendant are not an uncommon occurrence and because there is a scarcity of Ohio case law on the subject, the court feels it worthwhile to analyze the impact of the Uniform Commercial Code on this area of sales law.

The Uniform Commercial Code specifically provides for the situation in which express warranties are made during the negotiation of a sale, but then are allegedly disclaimed in the actual sales contract. In these cases preference is given to the express warranties and inconsistent disclaimers are inoperative to the extent they are unreasonable. R. C. 1302.29(A); U.C.C. 2-316(1).

In interpreting this provision, courts have been uniform in holding disclaimers which are inconsistent with an express warranty to be inoperative. *Jones* v. *Abriani* (Ind. App. 1976), 350 N.E. 2d 635; *Woodruff* v. *Clark Co. Farm Bureau Coop. Assn.* (1972), 286 N.E. 2d 188, 253 Ind. App. 31. The rationale for these decisions is succinctly expressed in the official comments to the Code:

"1. 'Express' warranties rest on 'dickered' aspects of the individual bargain, and go so clearly to the essence of that bargain that words of disclaimer in a form are repugnant to the basic dickered terms." Official Comment to U.C.C. 2-313; R. C. 1302.26.

Accordingly, when a written contract for the sale of goods provides that the goods are sold "as is" and also disclaims all warranties, either express or implied, and such provisions cannot reasonably be construed as consistent with the seller's oral express warranty, the express warranty will predominate and the inconsistent provisions are inoperative to the extent they are unreasonable. *Mobile Housing Inc.* v. *Stone* (Tex. Civ. App. 1973), 490 S.W. 2d 611. In the instant case, the disclaimer provisions in the sales contract and warranty document are hopelessly inconsistent with Chapel Hill's oral express warranties. The latter must predominate in that it would be unreasonable to allow the printed form

disclaimers to withdraw from the parties' agreement all the prior affirmations made as to the subject vehicle's ability to be used for commercial snow plowing.

Prior to the signing of these forms, it is clear that the parties had agreed on the sale of a truck fit for this purpose. This is what the defendant thought he was buying and what he was entitled to receive. Being in the business of selling used vehicles, Chapel Hill should have known of the numerous defects in the truck, *Regula* v. *Gerber* (1946), 47 Ohio Law Abs. 196, 70 N.E. 2d 662, and that it would be unfit for the hard use certain to result if used for snow plowing. For the breach of this express warranty, the defendant is entitled to recover damages.

The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. R. C. 1302.88(B); U.C.C. 2-714(2). In addition, in a proper case, incidental and consequential damages may also be recovered. R. C. 1302.88(C); U.C.C. 2-714(3).

In calculating damages, value need not be proved with mathematical certainty. *L. A. Green Seed Co.* v. *Williams* (1969), 246 Ark. 463, 438 S.W. 2d 717. The court finds the purchase price of the contract ($4,489.20) to be a reasonable indication of the market value of the truck if it had been as warranted. The price at which the truck was resold ($2,425) after being repossessed from the defendant is a valid indication of its actual market value absent the seller's glowing representations. The defendant is entitled to the difference between these two values as damages for breach of express warranty. R. C. 1302.88(B); U.C.C. 2-714(2). In addition, the defendant suffered repair bills to the extent of $840. Because the defendant had the benefit of using the truck for transportation purposes for several months the court will allow him half this amount as incidental damages. R. C. 1302.89(A); U.C.C. 2-715(1).

The Code provides that the buyer may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract. R. C. 1302.91; U.C.C. 2-717.

The plaintiff has claimed $2,503.39 as the unpaid balance

owing on the promissory note executed by the defendants. As stated above, defendant Ralph Pemberton is entitled to $2,064.20 as damages for breach of warranty and $420 for damages incidental to that breach. After deducting the defendant's damages from the price still due under the contract, the plaintiff is entitled to judgment in its favor in the amount of $19.19.

*Judgment accordingly.*