SELLERS, Appellee,

v.

MORROW AUTO SALES, Appellant.

[Cite as *Sellers v. Morrow Auto Sales* (1997), 124 Ohio App.3d 543.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA97–06–053.

Decided Dec. 22, 1997.

Laura Sellers, pro se.

*Fowler & Cole* and *Thomas T. Cole*, for appellant.

---

WALSH, Judge.

Plaintiff-appellee, Laura Sellers, purchased a used car from defendant-appellant, Morrow Auto Sales ("Morrow Auto") for $1,300 plus the trade-in value of her old car, a Ford Thunderbird. Javier Rizzi, the owner of Morrow Auto, told Sellers at the time of sale, "I guarantee the car; the car's a good car * * *." Rizzi also told Sellers, "[I]f you have any problems, bring the car back."

Sellers did have problems with the car. Four or five days after she purchased the car, Sellers brought it back to Morrow Auto, complaining that the car was "running hot." Rizzi told her that the car had a "floating gauge," and that it would be alright. After another few days, Sellers brought the car back again still complaining that the car was running hot. Sellers told Rizzi that her husband was going to put a new thermostat in the car. Rizzi gave Sellers $50 towards the cost of the thermostat. The car continued to overheat even with a new thermostat. Sellers brought the car back to Morrow Auto a third time. This time, Rizzi and an employee of Morrow Auto put antifreeze and water in the radiator when the car was turned off. Sellers testified at trial that she asked, "[S]houldn't I start this car before you put that stuff in the radiator? Won't it blow it or bust the header?" The employee answered, "[N]o, the car's fine." When Sellers did start the car, white smoke came from the engine and Rizzi told Sellers she had "cracked the head."

Morrow Auto returned Sellers's Thunderbird to her, but refused to return her $1,250 ($1,300 purchase price minus $50 returned to her for the new thermostat). Sellers brought an action to recover the $1,250 in small claims court. After a trial, the lower court entered judgment in Sellers's favor. From this judgment, Morrow Auto appeals.

In a single assignment of error, Morrow Auto complains that the trial court's judgment was against the manifest weight of the evidence. Morrow Auto raises two issues under the assignment of error. First, Morrow Auto states that the trial court should have applied the rule of *caveat emptor* ("let the buyer beware") to reach its decision. Second, Morrow Auto argues that its responsibility for the new car ended once Sellers's husband intervened by putting a new thermostat in the car.

We reject outright Morrow Auto's argument that the doctrine of *caveat emptor* applies in this case. *Caveat emptor* typically has no application to the sale of personal property, including used cars. *LaVeck v. Al's Mustang Stable* (1991), 73 Ohio App.3d 700, 704, 598 N.E.2d 154, 156, citing, *inter alia,* *Feliciano v. Moore* (1979), 64 Ohio App.2d 236, 18 O.O.3d 176, 412 N.E.2d 427. Instead,

Chapter Two of the Uniform Commercial Code, codified in Ohio at R.C. Chapter 1302, governs Sellers's purchase of a used car from Morrow. R.C. Chapter 1302 applies to "transactions in goods." R.C. 1302.02 (UCC 2–102). "Goods" means "all things * * * which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid," R.C. 1302.01(A)(8), and includes motor vehicles. See 81 Ohio Jurisprudence 3d (1988) 191, Sales, Section 41 ("it is self-evident that motor vehicles fall within the statutory definition of 'goods' "). See, also, *Fuqua Homes, Inc. v. Evanston Bldg. & Loan Co.* (1977), 52 Ohio App.2d 399, 403, 6 O.O.3d 440, 442, 370 N.E.2d 780, 783.

Under R.C. 1302.26(A)(1) (UCC 2–313), an express warranty is created by a seller when an affirmation of fact or a promise relating to goods becomes part of the basis for the bargain between two parties.[1] Express warranties can be made verbally. See *Society Natl. Bank v. Pemberton* (M.C.1979), 63 Ohio Misc. 26, 17 O.O.3d 342, 409 N.E.2d 1073 (statement that pickup truck would be "just right for plowing snow" was sufficient basis on which court could find creation of express warranty). They can also consist of guarantees made by the seller. See 3 Anderson (1995), Uniform Commercial Code 80, Section 2–313:101.

The trial judge, as trier of fact, is in the best position to weigh evidence and assess witness credibility. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Therefore, we will not substitute our judgment for that of the trier of fact. *Id.* Judgments supported by some competent, credible evidence going to the essential elements of a cause of action cannot be reversed as being against the manifest weight of the evidence. *C. E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579.

In this case, Sellers testified that when she was considering buying the car from Morrow Auto, Rizzi told her that he guaranteed the car and that if she had any problems with the car, she should return it to him. It appears that the trial court construed this language as constituting an express warranty on the part of Morrow Auto. When Sellers returned to Morrow Auto to enforce that warranty because the car was "running hot," Rizzi did not repair the car, but told her to continue driving it because the gauge was a "floating gauge." The trial court concluded that Sellers could not be held liable for damage that occurred because she drove the car on Morrow Auto's advice after she brought the car in

---

1.  R.C. 1302.26(A)(1) (UCC 2–213) states:
    "Express warranties by the seller are created as follows:
    "(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

for repairs. On these facts, we find that there is competent, credible evidence to support that determination.

Finally, we decline to address appellant's argument that the installation of a new thermostat in the car was a "superseding intervening cause." Morrow Auto did not raise this argument below, nor did the trial court address this issue in its judgment. We can find no error by the trial court for failing to address an issue that was never raised. In any case, the record does not support Morrow Auto's contention that the damage to the car resulted from the installation of the new thermostat. To the contrary, the record indicates that the car "ran hot" both before and after the new thermostat was installed. For the reasons stated above, the assignment of error is overruled.

The judgment of the trial court in favor of appellee is affirmed.

*Judgment affirmed.*

POWELL, P.J., and KOEHLER, J., concur.