OPINION
{¶ 1} Third-party Defendant-Appellant, Dayco Products, Inc. ("Dayco"), appeals the judgment of the Shelby County Court of Common Pleas following a jury verdict allowing Plaintiff-Appellee, Norcold, Inc. ("Norcold") to recover from Defendant-Third-Party Plaintiff-Appellee, Gateway Supply Company, Inc. ("Gateway") in the amount of $2,366,939 plus prejudgment interest and allowing Gateway to recover from Dayco in the amount of $2,385,646.40 plus prejudgment interest. Finding that the trial court erred when it denied Dayco's summary judgment motion in toto, when it should have only denied Dayco's summary judgment motion with respect to the express warranty that its product would be "free from defects in material and workmanship", we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 {¶ 2} Norcold produces and sells refrigerators to manufacturers of recreational vehicles and camping trailers. For several years, Gateway distributed pipes, fittings, and valves to Norcold for use in its refrigerators. In 1992, Norcold approached Gateway to discuss combining two pre-existing parts used to power Norcold's mobile refrigerator units. This combined unit would become known as a tap tee, which was used to carry flammable gas. After discussions with Norcold, Gateway contracted with Dayco to manufacture the tap tee.
 {¶ 3} Subsequently, Dayco delivered the tap tees to Gateway, which distributed them to Norcold, pursuant to Norcold's purchase orders. The purchase orders afforded Norcold the ability to test each tap tee prior to final assembly, and each tap tee was tested twice before being integrated into the refrigerators. In the summer of 1999, Norcold discovered that the tap tees were potentially hazardous due to stress corrosion cracking. Norcold voluntarily recalled its mobile refrigerator units and allegedly suffered damages in excess of $25,000.
 {¶ 4} In March of 2000, Norcold filed suit against Gateway, alleging breach of contract and breach of express and implied warranties. In response, Gateway filed a third-party complaint against Dayco. In its third-party complaint, Gateway alleged that Dayco had manufactured and sold it tap tees and asserted that it was entitled to indemnification as well as damages for breach of contract, breach of express and implied warranties, and unjust enrichment. Additionally, Gateway counterclaimed against Norcold for breach of contract, payment of an account, and unjust enrichment, all arising from Norcold's receipt of credit for approximately ten thousand four hundred tap tees, which Norcold returned to Gateway.
 {¶ 5} In October of 2000, Norcold amended its complaint, adding Dayco to its breach of express and implied warranty claims. In response, Gateway reasserted its claims against Dayco as cross-claims and its counterclaims against Norcold. Dayco answered the amended complaint and cross-claim, maintaining that it was entitled to indemnification and/or contribution from Gateway in the event it was liable to either Norcold or Gateway.
 {¶ 6} In February of 2002, Dayco sought summary judgment against Norcold and Gateway. Dayco argued that Gateway's claims failed because Dayco's invoices and packaging slips had disclaimed all warranties, except an express warranty that the goods were "free from defects in material and workmanship." Further, Dayco argued that its invoices and packaging slips limited the available remedies to refund, or at its option, repair or replacement, provided that Dayco received notice within 120 days of invoice.
 {¶ 7} Also in February of 2002, Gateway sought summary judgment against Norcold[1] and Dayco's cross-claim for indemnification. With respect to Gateway's motion for summary judgment on Dayco's cross-claim, it argued that, unlike Norcold and Dayco, it did not possess the necessary expertise to design the tap tee. Additionally, Gateway asserted that it did not assist Dayco in the manufacture of the tap tee, but acted as the "middle man" between Norcold and Dayco. Accordingly, Gateway contended that Dayco's cross-claim seeking indemnification for any judgment Norcold obtains against Dayco was without merit.
 {¶ 8} In May of 2002, the trial court denied Dayco's motion. In its judgment entry, the trial court found that Dayco made express warranties in its packaging slips. Citing R.C. 1302.29 (Uniform Commercial Code "U.C.C." 2-316), the trial court found that even though Dayco attempted to disclaim all warranties and limit its liability to the purchase price, repair, or replacement of the defective merchandise, Dayco could not effectively disclaim all warranties, when in the same document it was expressly warranting that the tap tees would be free from defect in material or workmanship. Further, the trial court found that Dayco's limited remedy provision failed its essential purpose.
 {¶ 9} On the same day, in a separate entry, the trial court granted Gateway's summary judgment motion against Norcold and Dayco and dismissed all claims against Gateway. Subsequently, the trial court added Civ. R. 54(B) language to this entry.
 {¶ 10} Prior to the trial court's decision on Dayco's and Gateway's summary judgment motions, Norcold moved for leave to file a second amended complaint. The motion was initially denied. However, upon Norcold's motion to reconsider and after the claims against Gateway were dismissed, the trial court granted Norcold leave to amend its complaint for a second time.
 {¶ 11} In July of 2002, Norcold filed its second amended complaint. In its second amended complaint, Norcold asserted contract based damages against Gateway for breach of contract and breach of express and implied warranties. Also, Norcold asserted tort claims against Dayco. Gateway and Dayco both answered with the same claims each argued in response to Norcold's first amended complaint.
 {¶ 12} In September of 2002, pursuant to an agreed judgment entry, all claims Norcold asserted against Gateway in its second amended complaint were dismissed in accordance with the trial court's May 2002 grant of summary judgment.
 {¶ 13} In November of 2002, Dayco moved for summary judgment on Norcold's amended tort claim. In December of 2002, the trial court granted the motion, finding that absent privity of contract Ohio law does not provide a common law remedy in tort to a commercial purchaser of a defective product for purely economic loss. The trial court added Civ. R. 54(B) language to this judgment entry.
 {¶ 14} In January of 2003, Norcold appealed the trial court's May 2002 grant of summary judgment to Gateway and the trial court's December 2002 grant of summary judgment to Dayco.[2] Dayco did not cross-appeal at that time.
 {¶ 15} In August of 2003, this Court affirmed the trial court's grant of Dayco's summary judgment motion against Norcold's tort claim and reversed the grant of Gateway's summary judgment motion on Norcold's contract claims in part. Norcold I, 154 Ohio App.3d 594, 2003-Ohio-4252. Specifically, this Court reversed the trial court's granting of summary judgment on the express warranty and the implied warranty of fitness for a particular purpose claims, but affirmed the trial court's denial of Gateway's implied warranty of merchantability claim. Id. at ¶ 10-29.
 {¶ 16} Subsequently, Norcold filed an additional suit against Dayco, asserting contract claims, which was consolidated into the case sub judice. In May of 2004, Dayco moved for summary judgment on the new contract claims, which the trial court granted. The trial court's judgment entry included Civ. R. 54(B) language, and Norcold has not appealed that judgment.
 {¶ 17} In October of 2004, the parties entered into a stipulation which defined the outstanding claims remaining for determination. Under the stipulation, Norcold had claims against Gateway for breach of express warranty, under R.C. 1302.26 (U.C.C. 2-313), and breach of implied warranty of fitness for a particular purpose, under R.C. 1302.28
(U.C.C. 2-315). Gateway had a counterclaim against Norcold for an affirmative recovery for the returned parts. In addition, Gateway claimed that if Dayco manufactured defective tap tees, then Dayco would have breached its contract with Gateway and its express warranties and implied warranties of merchantability and of fitness for a particular purpose. Also, Gateway claimed unjust enrichment, indemnity, and contribution against Dayco. Dayco had no claims pending against either Norcold or Gateway.
 {¶ 18} In November of 2004, a jury trial was held. At trial, the trial court decided it would follow its May 2002 ruling on Dayco's summary judgment motion on Gateway's claims. In doing so, the trial court excluded any evidence relating to the disclaimer of warranties between Dayco and Gateway. Dayco objected and sought an opportunity to proffer evidence, which was granted. Dayco then filed a written proffer wherein it described its disclaimer and limitation of remedy language as well as other evidence. Additionally, Dayco moved for a directed verdict on the same grounds it had argued in its summary judgment motion against Gateway, as well as for lack of evidence of reliance as to both warranties and for lack of proof of an express warranty, all of which the trial court denied.
 {¶ 19} Before closing arguments, the parties entered into a stipulation which took away from the jury Gateway's counterclaims against Norcold for the returned tap tees and cross-claims against Dayco for breach of contract and unjust enrichment. According to the stipulation, if the jury held against Norcold, then the court would enter a verdict for Gateway against Norcold for $22,241.02 (the amount Gateway charged Norcold for the returned tap tees) and, if the jury returned a verdict for Norcold, then the court would enter a verdict against Dayco for the price Gateway paid Dayco for the tap tees. Additionally, the stipulation preserved all rights to post-verdict relief and appeal. Finally, Gateway dismissed its indemnification, contribution, and breach of implied warranty of merchantability claims against Dayco after it rested at trial.
 {¶ 20} After closing arguments, the jury was asked to decide the four remaining stipulated claims. The first two claims were Norcold's claims against Gateway for breach of express warranty and implied warranty of fitness for a particular purpose. The other two claims were Gateway's claims against Dayco for breach of express warranty and implied warranty of fitness for a particular purpose.
 {¶ 21} The jury found in favor of Norcold on "either or both of its claim(s)" in the amount of $2,366,930 and in favor of Gateway on "either or both of its claim(s)" in the same amount. In its January 2005 judgment entry, the trial court ordered and adjudged that Norcold would recover $2,366,930 from Gateway, plus prejudgment and post judgment interest. Also, the trial court ordered and adjudged that Gateway would recover the same from Dayco. Additionally, as stipulated between the parties, Gateway was awarded $18,707.40 against Dayco for the returned tap tees.
 {¶ 22} Subsequently, Dayco moved for judgment notwithstanding the verdict or new trial, both of which the trial court denied.
 {¶ 23} It is from the January 2005 judgment entry and denial of its post-trial motions Dayco appeals, presenting the following assignments of error for our review:
 Assignment of Error No. I The Trial Court Erred In Denying The Corrected Summary Judgment Motion Of Third-Party Defendant-Appellant Dayco Products, Inc. ("Dayco") (T.d. 65) Seeking Judgment That Dayco Is Not Liable To Third-Party Plaintiff-Appellee.
 Assignment of Error No. II The Trial Court Erred In Excluding Third-Party Defendant-Appellant Dayco Products, Inc.'s ("Dayco") Warranty-Related Evidence Relevant To Third-Party Plaintiff-Appellee Gateway Supply Company's ("Gateway") Claims (T.d. 222; T.p. VI: 1015, 1026; VII: 1143-45) And In Admitting Gateway Ex. GH1-9. (T.p. I: 47-49; V: 786-88.)
 Assignment of Error No. III The Trial Court Erred In Instructing The Jury (T.d. 185, 222; T.p. VII: 1143-45) On Third-Party Plaintiff-Appellee Gateway Supply Company's ("Gateway") Breach Of Warranty Claims. (T.p. VII: 1119-47.)
 Assignment of Error No. IV The Trial Court Erred In Denying The Motions Of Third-Party Defendant-Appellant Dayco Products, Inc. ("Dayco") For A Directed Verdict (T.p. IV: 592-97; V: 790-93; VI: 1025-27) On Third-Party Plaintiff-Appellee Gateway Supply Company's ("Gateway") Claims. (T.p. IV: 597; V: 792-93; VI: 1025-27.)
 Assignment of Error No. V The Trial Court Erred In Denying The Motion Of Third-Party Defendant-Appellant Dayco Products, Inc. ("Dayco") For Judgment Notwithstanding The Verdict (T.d. 246) On Third-Party Plaintiff-Appellee Gateway Supply Company's ("Gateway") Claims. (T.d. 261.)
 Assignment of Error No. VI The Trial Court Erred In Denying The Motion Of Third-Party Defendant-Appellant Dayco Products, Inc. ("Dayco") For A New Trial (T.d. 246) On Third-Party Plaintiff-Appellee Gateway Supply Company's ("Gateway") Claims. (T.d. 261.)
 Assignment of Error No. I {¶ 24} In its first assignment of error, Dayco asserts that the trial court erred in its May 2002 denial of Dayco's summary judgment motion, seeking judgment against Gateway. We agree in part and disagree in part.
 {¶ 25} Before reaching the merits on this assignment of error, both Gateway and Dayco vigorously argued, in their respective briefs and in oral arguments, that the threshold issue on appeal is whether Dayco was required to appeal the trial court's May 2002 denial of Dayco's February 2002 motion for summary judgment against Gateway during the earlier appellate proceedings in Norcold I.
 {¶ 26} Gateway argues that under the doctrine of "Law of the Case", the trial court was obligated to follow its May 2002 decision at trial, following our remand in Norcold I. Gateway argues that Dayco's failure to cross appeal the trial court's May 2002 decision precludes appellate relief for Dayco now on the issues that could have been ruled upon inNorcold I.
 {¶ 27} In making its argument, Gateway relies on App. R. 3(C)(1) which provides:
 A person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shall file a notice of cross appeal within the time allowed by App. R. 4.
Gateway asserts that the May 2002 decision was originally an interlocutory order, but when a final judgment was issued and the prior appeal occurred, all interlocutory orders, including the May 2002 decision overruling Dayco's motion for summary judgment, merged into that final judgment. As a result of Dayco's failure to cross appeal inNorcold I, Gateway argues that Dayco is now precluded from doing so in the appeal before us. Therefore, Gateway argues, relying onSingleton v. Singleton (1994), 95 Ohio App.3d 467, 471, quotingBlackwell v. Internatl. Union, U.A.W. (1984), 21 Ohio App.3d 110, 112, that this Court should render all assignments of error based upon Dayco's motion for summary judgment against Gateway moot because those issues should have been appealed in Norcold I.
 {¶ 28} Conversely, Dayco argues, in its reply brief and at oral argument, that the May 2002 decision did not become "Law of the Case," even though Dayco failed to cross appeal the trial court's May 2002 decision in Norcold I. Dayco argues that App. R. 3(C)(1) applies only if the interlocutory ruling does in fact merge into the judgment on appeal. Dayco also notes that Gateway did not cite any authority that holds that interlocutory rulings merge into a judgment appealable due to Civ. R. 54(B) certification.
 {¶ 29} While both sides make persuasive arguments, we agree with Dayco. In Norcold I, Norcold appealed the trial court's grant of summary judgment motions by Dayco and Gateway. After this Court reversed the grant of summary judgment for Norcold's express warranty and implied warranty of fitness for a particular purpose claims against Gateway and affirmed the trial court's barring of tort claims against Dayco,Norcold I, 154 Ohio App.3d, at 594, 2003-Ohio-4252, at ¶ 1, "this court returned jurisdiction of the case to the trial court, which retains jurisdiction to reconsider its interlocutory orders, either suasponte or upon motion, any time before it enters final judgment in the case." Nilavar v. Osborn (2000), 137 Ohio App.3d 469, 499.
 {¶ 30} Thus, it is important to consider when an interlocutory order becomes final order. Under R.C. 2505.03(A), "[e]very final order * * * may be reviewed on appeal * * *." R.C. 2505.03(A).
 {¶ 31} R.C. 2505.02(B) defines certain types of final orders as follows:
 (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
 (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
 (3) An order that vacates or sets aside a judgment or grants a new trial;
 (3) An order that grants or denies a provisional remedy and to which both of the following apply:
 (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.
 (4) An order that determines that an action may or may not be maintained as a class action;
 (5) An order determining the constitutionality of any changes to the Revised Code made by Am. Sub. S.B. 281 of the 124th general assembly, including the amendment of sections 1751.67, 2117.06, 2305.11, 2305.15, 2305. 234, 2317.02, 2317.54, 2323.56, 2711.21, 2711.22, 2711.23, 2711.24, 2743.02, 2743.43, 2919.16, 3923.63, 3923.64, 4705.15, and 5111.018, and the enactment of sections 2305.113, 2323.41, 2323.43, and 2323.55 of the Revised Code or any changes made by Sub. S.B. 80 of the 125th general assembly, including the amendment of sections 2125.02, 2305.10, 2305.131, 2315.18, 2315.19, and 2315.21 of the Revised Code.
 {¶ 32} In the case sub judice, we are only concerned with the type of final order stated in R.C. 2505.02(B)(1), which is an order affecting a substantial right which determines an action and prevents a judgment. A substantial right is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1), In reEstate of Wyckoff (1957), 166 Ohio St. 354, 358. Therefore, a trial court order depriving a party of a remedy which the party would have otherwise possessed deprives that party of a substantial right. ChefItaliano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, 88. Furthermore, a final order must comply with Civ. R. 54(B), if applicable. Id.
 {¶ 33} "Civ. R. 54(B) applies to those situations where there is more than one claim for relief presented or where multiple parties are involved in an action, and where the lower court has rendered a final judgment, pursuant to R.C. 2505.02, with respect to fewer than all of the parties or to fewer than all of the claims." Id. The purpose of Civ. R. 54(B) is to accommodate the policy against piecemeal appeals and "to insure that parties to such actions may know when an order or decree has become final for purposes of appeal * * *." Pokorny v. Tilby Dev.Co. (1977), 52 Ohio St.2d 183, 186.
 {¶ 34} The Ohio Supreme Court stated that an order of a court is thus "a final, appealable order only if the requirements of both Civ. R. 54(B), if applicable, and R.C. 2505.02 are met." Chef Italiano,44 Ohio St.3d at 88, Noble v. Colwell (1989), 44 Ohio St.3d 92, 96.
 {¶ 35} In the case sub judice, when the trial court granted Gateway's motion for summary judgment, which dismissed the indemnification and/or contribution claims, the order affected Dayco's substantial rights pursuant to R.C. 2505.02. Since the trial court dismissed Dayco's only counts against Gateway, Dayco's action against Gateway was determined since no claims remained pending. Because no claims remained against Gateway, Dayco was prevented from obtaining judgment against Gateway. Thus, the portion of the trial court's May 2002 entry which granted summary judgment for Gateway was a final order under R.C. 2502.02. Further, since the order expressly determined that there was "no just reason for delay," the order was appealable. Civ. R. 54(B); see ChefItaliano, 44 Ohio St. 3d, at 88-90.
 {¶ 36} Turning to the trial court's denial of Dayco's motion for summary judgment, it is well established that the denial of a motion for summary judgment is not a final appealable order. State ex rel.Overmeyer v. Walinski (1966), 8 Ohio St.2d 23. This is due to the fact that the denial does not determine the action and prevent a judgment and, therefore, is not a final appealable order under R.C. 2505.02.Celebrezze v. Netzley (1990), 51 Ohio St.3d 89, 90. See, also, Klein v.Portage Cty. (2000), 139 Ohio App.3d 749, 751. The denial of a motion for summary judgment is always reviewable on appeal after a final judgment has been issued. Therefore, now that a final judgment has been entered, Dayco is free to appeal from the portion of the trial court's May 2002 decision that overruled its motion for summary judgment against Gateway.
 {¶ 37} Accordingly, we will now discuss the merits of Dayco's first assignment of error. In its first assignment of error, Dayco argues that the trial court erred in denying its summary judgment motion as to the express warranties, implied warranty of merchantability, implied warranty of fitness for a particular purpose, breach of contract, unjust enrichment, and indemnification and contribution claims. We agree in part and disagree in part.
 {¶ 38} An appellate court reviews a summary judgment order de novo.Wampler v. Higgins, 93 Ohio St.3d 111, 127, 2001-Ohio-1293; NorcoldI, 154 Ohio App.3d at 598, 2003-Ohio-4252, at ¶ 9; Hillyer v. State FarmMut. Auto Ins. Co. (1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. DaytonHeidelberg Distrib. Co., 148 Ohio App.3d 596, 2002-Ohio-3932, at ¶ 25, citing State ex rel. Cassels v. Dayton City School Dist. Bd. ofEdn., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to be one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore (3) the moving party is entitled to judgment as a matter of law. Civ. R. 56(C);Horton v. Harwick Chem. Corp., 73 Ohio St.3d 679, 686-87, 1995-Ohio-286. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the non-moving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 360.
 {¶ 39} The party moving for summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. State ex rel. Burnes v. Athens CityClerk of Courts, 83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also,Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 Express Warranties {¶ 40} We will begin by discussing Dayco's express warranties which it gave to Gateway. The tap tees' packing slips Dayco issued after February 1997 to Gateway included the following language:
 Warranty and Limitations of Liability
 All merchandise manufactured by Dayco is warranted to be free from defects in material and workmanship. Dayco's liability under this warranty is limited to the purchase price or, at its option the repair or replacement of merchandise proved defective upon its return to us, transportation charges prepaid, with our prior written authorization. No claim will be allowed under this warranty unless we are notified within one hundred twenty (120) days from the date of invoice.
 EXCEPT AS EXPRESSLY STATED ABOVE, DAYCO MAKES NO WARRANTY, EXPRESS OR IMPLIED, WHETHER OF MERCHANTABILITY OF FITNESS FOR ANY PARTICULAR PURPOSE OR USE OR OTHERWISE OF THE PRODUCT OR ON ANY PARTY OR LABOR FURNISHED DURING THE SALE, DELIVERY OR SERVICING OF THE PRODUCTS. IN NO EVENT SHALL DAYCO BE LIABLE TO BUYER FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL
 DAMAGES ARISING OUT OF, OR AS THE RESULT OF, THE SALE, DELIVERY, SERVICING, USE OR LOSS OF USE OF THE PRODUCTS OR ANY PART THEREOF FOR ANY CHARGES OR EXPENSES OF ANY NATURE INCURRED WITHOUT DAYCO'S WRITTEN CONSENT. IN NO EVENT SHALL DAYCO'S LIABILITY UNDER ANY CLAIM MADE BY BUYER EXCEED THE PURCHASE PRICE OF THE PRODUCTS IN RESPECT OF WHICH DAMAGES ARE CLAIMED.
 {¶ 41} Express warranties are created by a seller under R.C. 1302.26. As part of Ohio's Uniform Commercial Code, these sections are applicable to "transactions in goods[.]" R.C. 1302.02 (U.C.C. 2-102). It is undisputed that the tap tees are goods. R.C. 1302.26 (U.C.C. 2-313) provides, in pertinent part:
 (A) Express warranties by the seller are created as follows:
 (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
 (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
 (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
 (B) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty * * * .
 {¶ 42} We agree with the trial court that the language used in Dayco's packing slips was unambiguous. As such, "[w]hen the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Shifrin v. Forest City Enterprises, Inc.,64 Ohio St.3d 635, 638, 1992-Ohio-28. Dayco's packaging slips state that "all merchandise manufactured by Dayco is warranted to be free from defects in material and workmanship." And, we agree with the trial court's finding that Dayco made an express warranty in its packaging slips under R.C. 1302.26(A). Specifically, we find that Dayco made and admits to creating an express warranty that the tap tees "will be free from defects in material and workmanship."
 {¶ 43} Next, the trial court determined that "Dayco can not effectively disclaim all warranties, when in the same document it is expressly warranting that the tap tees will be free from defect." (May 20, 2002 Judgment Entry). In reaching this conclusion, the trial court relied on R.C. 1302.29 (U.C.C. 2-316). R.C. 1302.29, entitled "Exclusion or modification of warranties * * *", provides in pertinent part:
 (A) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of section 1302.05 of the Revised Code on parole or extrinsic evidence, negation or limitation is inoperative to the extent that such construction is unreasonable. * * *.
 {¶ 44} Under R.C. 1302.29, it is difficult for a seller of goods to disclaim express warranties because express warranties generally form the basis of the bargain and, therefore, would be unreasonable to disclaim. See Ohio Sav. Bank v. H.L. Vokes Co. (1989),54 Ohio App.3d 68, 72; Society Nat. Bank v. Pemberton (1979), 63 Ohio Misc. 26, 29. The Official Comment to R.C. 1302.29 explains the purpose of restricting the disclaimers of express warranties:
 This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude "all warranties, express or implied." It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise.
 {¶ 45} Examples of improper disclaimers of express warranties can be found in a number of cases where a seller improperly attempted to disclaim a previous written or oral express warranty in the contract that followed. See e.g., H.L. Vokes Co., 54 Ohio App.3d at 72;General Motors Acceptance Corp. v. Grady (1985), 27 Ohio App.3d 321,323; Pemberton, 63 Ohio Misc. at 29.
 {¶ 46} However, reading the plain language of R.C. 1302.29(A), the statute allows an express warranty to be negated or limited, if the disclaimer is not unreasonable. In the case sub judice, the disclaimer, which limited the express warranties, was located on the packaging slips for the tap tees. When an individual reads the packaging slips for the tap tees, he or she would have been informed that Dayco has only expressly warranted that the tap tees would be "free from defects in material and workmanship" and that Dayco disclaimed all other express warranties. This is not a case where the buyer needs protection from unbargained and unexpected disclaimers as the Code intended. Instead, Gateway is a commercial purchaser and not a purchaser who needs protection from unexpected and unbargained for disclaimers. The present situation appears to be the atypical case in which a seller has effectively limited an express warranty.
 {¶ 47} Therefore, we agree with the trial court that Dayco gave an express warranty; however, we find that Dayco has limited its express warranty coverage to "defects in material and workmanship" and has disclaimed all other express warranties.
 Implied Warranty of Fitness for a Particular Purpose {¶ 48} Dayco also argues that since it properly disclaimed the implied warranty of fitness for a particular purpose, the trial court erred in denying its summary judgment motion against Gateway. We agree.
 {¶ 49} With respect to the implied warranty of fitness for a particular purpose, R.C. 1302.28 (U.C.C. 2-315) provides in pertinent part:
 Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 1302.29 of the Revised Code an implied warranty that the goods shall be fit for such purpose.
Thus, under R.C. 1302.28 unless excluded or modified under R.C. 1302.29, an implied warranty of fitness for a particular purpose arises if the seller is aware at the time of contracting of a particular purpose for which the buyer intends to use the goods, and the buyer relies on the seller's skill or judgment to select or furnish goods suitable for that particular purpose. R.C. 1302.28; Dugan Meyers Const. Co., Inc. v.Worthington Pump Corp. (USA) (1984), 746 F.2d 1166, 1175 (6th Cir.);Price Bros. Co. v. Philadelphia Gear Corp. (1981), 649 F.2d 416, 423
(6th Cir.).
 {¶ 50} With regards to the exclusion of the implied warranty of fitness for a particular purpose, R.C. 1302.29 provides in pertinent part:
 (B) Subject to division (C) of this section, * * * to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states for example, that "There are no warranties which extend beyond the description on the face thereof."
 {¶ 51} R.C. 1301.01(J) (U.C.C. 1-201) defines conspicuous and provides that a determination of conspicuousness is a matter of law for the court to decide. Specifically, R.C. 1301.01(J) provides:
 A term or clause is "conspicuous" when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is "conspicuous." Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. * * * Whether a term or clause is "conspicuous" is for decision by the court.
Here, Dayco's packaging slips provide that other than the express warranty that all merchandise manufactured by Dayco is to be free from defects in material and workmanship, "DAYCO MAKES NO WARRANTY, EXPRESS OR IMPLIED, WHETHER OF MERCHANTABILTY OF FITNESS FOR ANY PARTICULAR PURPOSE OR USE OR OTHERWISE OF THE PRODUCTS OR ON ANY PARTS OR LABOR FURNISHED DURING THE SALE, DELIVERY OR SERVICING OF THE PRODUCTS." Even though the disclaimer language does not use the "Safe Harbor" language provided in the Code, we find that the disclaimer language in Dayco's packaging slips disclaimed any implied warranty of fitness for a particular use that Dayco might have given Gateway. Also, we find that the language is "conspicuous" as defined under R.C. 1301.01(J). Since the language disclaiming the implied warranty of fitness for a particular purpose is in the body of the packaging slips, in larger type than the surrounding language, and in all capital letters, we find that Dayco successfully disclaimed the implied warranty of fitness for a particular purpose with regards to the tap tees sold to Gateway and which Gateway then sold to Norcold.
Implied Warranty of Merchantability, Breach of Contract, UnjustEnrichment, and Indemnification and Contribution Claims
 {¶ 52} Dayco also argues the trial court should have granted its motion for summary judgment on Gateway's implied warranty of merchantability, breach of contract, unjust enrichment, and indemnification and contribution claims. Since the breach of contract and unjust enrichment claims were taken out of the jury's hands by an agreed stipulation between Dayco, Norcold, and Gateway, the issue of the trial court's denial of summary judgment on these claims has been rendered moot. Additionally, since Gateway dismissed at trial its implied warranty of merchantability, indemnification, and contribution claims, the issue of the trial court's denial of summary judgment on these claims has been rendered moot. Therefore, we decline to address them.
 Limitation of Remedies {¶ 53} Having found that Dayco properly disclaimed the implied warranty of fitness for a particular purpose and all express warranties except that the tap tees would be free from defects in material and workmanship, we now consider whether the portion of Dayco's packing slips which attempts to limit the remedies and damages for a breach of the express warranty that the tap tees would be free of defects in material and workmanship is proper.
 {¶ 54} Dayco argues that the trial court erred in failing to grant it judgment on the express warranty claim when it limited remedies to refund or, at its option, repair or replacement, provided Gateway gave it notice within 120 days of an invoice. Additionally, Dayco argues that it excluded all consequential damages.
 {¶ 55} Pursuant to R.C. 1302.29(D) and 1302.93(A)(1) (U.C.C. 2-719), the seller may limit the buyer's remedies for breach of warranty to the repair or replacement of the defective product. In addition, liability for consequential damages may be limited or excluded "unless the limitation or exclusion is unconscionable." R.C. 1302.93(C).
 {¶ 56} "`Repair or replacement' remedies are designed `to give the seller an opportunity to make the goods conforming while limiting the risks to which he is subject by excluding direct and consequential damages that might otherwise arise.'" Chemtrol Adhesives, Inc. v.American Mfrs. Mut. Ins. Co. (1989), 42 Ohio St.3d 40, 56, quotingBeal v. General Motors Corp. (D.Del. 1973), 354 F.Supp. 423, 426. Further, limited remedies generally fail only where the seller is unable or unwilling to make repairs within a reasonable time.Chemtrol, 42 Ohio St.3d at 56. Ohio law provides that the determination of whether a warranty has failed to fulfill its essential purpose is ordinarily a question of fact for the jury. Id. citing Cayuga Harvester,Inc. v. Allis-Chalmers Corp. (1983), 95 A.D.2d 5, 465 N.Y.S.2d 606;Johnson v. John Deere Co. (S.D. 1981), 306 N.W.2d 231.
 {¶ 57} In the case sub judice, there is no evidence on which to base a finding that Dayco was unable or unwilling to repair and/or replace the tap tees within a reasonable time. Thus, it would be unreasonable to conclude that the remedy failed of its essential purpose. Accordingly, we need not decide whether the exclusion of consequential damages would remain enforceable if the repair-or-replacement remedy had failed of its essential purpose.
 {¶ 58} Based on the foregoing discussion, we find that the trial court in its May 2002 judgment entry properly denied Dayco's summary judgment motion with respect to Gateway's claim that the tap tees violated Dayco's express warranty that the tap tees will be "free from defects in material or workmanship", since there are material issues of fact as to whether the tap tees were free from defects in material or workmanship. Additionally, we find that the trial court erred in denying Dayco's summary judgment motion with respect to any other express warranties given by Dayco to Gateway, since Dayco properly disclaimed all other express warranties in their packaging slips, except that the tap tees would be "free from defects in material or workmanship" under 1302.29(A). Also, we find that the trial court should have granted Dayco's summary judgment motion with respect to Gateway's claim that Dayco violated its implied warranty of fitness for a particular purpose, since Dayco properly disclaimed that warranty under R.C. 1302.29(B). Further, we find that the trial court improperly concluded that Dayco's limited remedy provision failed in its essential purpose, since that is an issue of fact reserved for the trier of fact to determine whether Dayco was unable or unwilling to make repairs to the tap tees in a reasonable time. Also, we remand the issue of limited remedies to the trial court for a determination of exactly which damages are excluded under Dayco's limited remedy provision. Finally, the agreed stipulation between the parties for the returned parts shall remain in effect until further proceedings determine who is liable for the defects in the tap tees. We remand for further proceedings consistent with this opinion.
 {¶ 59} Accordingly, Dayco's first assignment of error is sustained in part and overruled in part.
 Assignments of Error Nos. II, III, IV, V, VI {¶ 60} In its second assignment of error, Dayco argues that the trial court erred in excluding its warranty related evidence which was relevant to Gateway's claims and in admitting certain Gateway exhibits. In its third assignment of error, Dayco argues that the trial court erred in instructing the jury on Gateway's breach of warranty claims. In its fourth assignment of error, Dayco argues that the trial court erred in denying its motion for a directed verdict on Gateway's claims. In its fifth assignment of error, Dayco argues that the trial court erred in denying its motion for judgment notwithstanding the verdict on Gateway's claims. In its sixth assignment of error, Dayco argues that the trial court erred in denying its motion for a new trial on Gateway's claims. Since we are remanding this case for further proceedings, our resolution of Dayco's first assignment of error renders the second, third, fourth, fifth, and sixth assignments of error moot and we decline to address them. App. R. 12(A)(1)(c).
 {¶ 61} Having found no error prejudicial to Appellant in the trial court's denial of Appellant's summary judgment motion with respect to Appellant's express warranty that the tap tees would be "free from defects in material and workmanship", but having found error prejudicial to Appellant in the trial court's denial of Appellant's summary judgment motion with respect to Appellant's implied warranty of fitness for a particular purpose and its disclaiming of all other warranties express or implied, as well as limiting the available remedies, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.
Judgment Affirmed in Part and Reversed in Part and CauseRemanded.
 BRYANT, P.J. and CUPP, J., concur.
[1] Gateway' s motion for summary judgment against Norcold was discussed and ruled upon in Norcold, Inc. v. Gateway Supply Co.,Inc., 154 Ohio App.3d 594, 2003-Ohio-4252, at ¶ 5, 9-29. (hereinafter referred to as "Norcold I ").
[2] In June of 2003, the trial court amended nunc pro tunc both the May 2002 grant of summary judgment to Gateway and the December 2002 grant of summary judgment to Dayco to also state that there is no just cause for delay under Civ. R. 54(B).