# CIRCUIT COURT OF FAIRFAX COUNTY

Credit Acceptance Corp.

v.

Shawnda M. Coates

June 20, 2008

Case No. CL-2008-1213

BY JUDGE BRUCE D. WHITE

This matter came before the Court on June 13, 2008, on Defendant's Plea in Bar/Motion for Partial Summary Judgment. The sole issue before the Court is whether Credit Acceptance Corporation's (hereafter "CAC") breach of contract action against Shawnda Coates is barred by the applicable statute of limitations. At the conclusion of the hearing, the matter was taken under advisement. For the reasons set forth below, Defendant's Plea in Bar/Motion for Partial Summary Judgment is granted.

*Background*

On February 26, 2001, Shawnda Coates and Eastern's Toy Store entered into a Motor Vehicle Installment Sale Contract and Security Agreement (the "Contract") for the purchase of a 1997 Dodge Intrepid. The Contract identifies Shawnda M. Coates as the "Buyer" and Eastern's as the

"Seller/Creditor." (Compl. Ex. A at 1.) The purchase price of the vehicle was $18,264.15. In addition to a down payment of $1,800, the Contract required Ms. Coates to pay 45 monthly installments of $365.87, beginning March 26, 2001. (Compl. Ex. A at 1.)

The Contract states that "[b]y signing this contract, You [Ms. Coates] choose to buy the vehicle on credit under the agreements on the front and back of this contract." (Compl. Ex. A at 1.) In the same document, Eastern's Toy Store assigned all of its rights and interests in the Contract, including the right to receive payments from Ms. Coates, to CAC. The Assignment clause reads: "For value received, Seller hereby sells, assigns, and transfers all Seller's right, title, and interest in and to this contract, and in and to the Property described herein, to Credit Acceptance Corporation. . . ." (Compl. Ex. A at 2.)

On March 30, 2001, Ms. Coates paid the first installment of $365.87 to CAC in full. Thereafter, Ms. Coates made three partial payments, the last of which was on July 5, 2001. The three partial payments were: (1) June 2, 2001 of $365.00; (2) June 19, 2001 of $200.00; and (3) July 5, 2001, of $180.00. (Compl. Ex. B). On August 31, 2004, CAC declared Ms. Coates to be in default. (Pl. Opp. to Def. Plea in Bar/Mot. for Partial Summ. J., ¶ 11.) Between August 31, 2004, and November 28, 2007, CAC sent several demand letters to Ms. Coates. When Ms. Coates failed to respond, CAC filed the present action on January 25, 2008, to recover the outstanding balance of Ms. Coates' debt.

The matter now comes before this Court on Defendant's Plea in Bar/Motion for Partial Summary Judgment.

*Discussion*

The sole issue before the Court is whether CAC's breach of contract action against Ms. Coates is barred by the applicable statute of limitations. The issue turns on two considerations. The first is whether the Contract is governed by the Uniform Commercial Code's (hereafter "UCC") four-year statute of limitations or the five-year statute of limitations for written contracts. The Court's second task is to determine when the limitation period began to run on CAC's cause of action.

A. *Statute of Limitations*

To determine which statute of limitations applies to the Contract, this Court must first characterize the nature of the transaction. If the Contract constitutes a sale of goods, the four-year statute of limitations set forth in

Article 2 of the UCC applies. Va. Code Ann. § 8.2-105 (1991). Otherwise, the standard five-year limitations period for written contract applies. Va. Code Ann. § 8.01-246 (1977).

Ms. Coates argues that, because a motor vehicle constitutes a good, the four-year statute of limitations set forth in Article 2 of the UCC governs the contract. CAC urges the Court to apply the five-year statute of limitations for written contracts for two reasons. First, CAC disputes that motor vehicles fall within the UCC's definition of goods because Ms. Coates used the vehicle for personal rather than commercial purposes. Second, CAC contends the Contract does not constitute a "transaction in goods" because the transaction with Ms. Coates is a "consumer credit contract" independent from the sales transaction involving the motor vehicle.

Article 2 of the Virginia UCC governs all "transactions in goods." Va. Code Ann. 8.2-102 (1964). Virginia Code § 8.2-105 defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action."

Although Virginia Courts have never explicitly held a motor vehicle falls within the UCC's definition of a good, several Virginia appellate courts have tacitly adopted this position by applying various provisions of the Virginia UCC to contracts involving motor vehicle sales. *See Manassas Autocars, Inc. v. Couch*, 274 Va. 82, 645 S.E.2d 443 (2007); *Gasque v. Mooers Motor Car Co.*, 227 Va. 154, 313 S.E.2d 384 (1984); *Marshall v. Murray Oldsmobile Co.*, 207 Va. 972, 154 S.E.2d 140 (1967). Additionally, every state that has addressed the issue has concluded a motor vehicle is indeed a good. *See, e.g., Quality Truck & Auto Sales, Inc. v. Yassine*, 730 So. 2d 1164, 1169 (Ala. 1999); *Quartz of S. California, Inc. v. Mullen Bros., Inc.*, 151 Cal. App. 4th 901, 907, 61 Cal. Rptr. 3d 54, 58 (2007) (identifying vehicles as goods but excluding vehicle sales from the scope of the UCC because California's Vehicle Code specifically supersedes the UCC for such transactions); *Peckham v. Larsen Chevrolet-Buick-Oldsmobile, Inc.*, 99 Idaho 675, 676, 587 P.2d 816, 817 (1978); *Madrid v. Bloomington Auto Co.*, 782 N.E.2d 386, 395 (Ind. App. 2003); *General Motors Acceptance Corp. v. Keil*, 176 N.W.2d 837, 843 (Iowa 1970); *Stanturf v. Quality Dodge, Inc.*, 3 Kan. App. 2d 485, 486, 596 P.2d 1247, 1248 (1979); *Barnes v. Community Trust Bank*, 121 S.W.3d 520, 522 (Ky. App. 2003); *Cent. GMC, Inc. v. Helms*, 303 Md. 266, 273, 492 A.2d 1313, 1316 (1985); *Herbert v. Harl*, 757 S.W.2d 585, 588 (Mo. 1988); *Alford v. Neal*, 229 Neb. 67, 74, 425 N.W.2d 325, 329 (1988); *Alice A. Baker, Inc., v. Norton*, 192 Misc. 2d 511, 512, 747 N.Y.S.2d 146, 147 (N.Y. Sup. Ct.

2002); *Gillespie v. American Motors Corp.*, 51 N.C. App. 535, 538, 277 S.E.2d 100, 102 (1981); *Sellers v. Morrow Auto Sales*, 124 Ohio App. 3d 543, 546, 706 N.E.2d 837, 838 (1997); *Yates v. Clifford Motors, Inc.*, 283 Pa. Super. 293, 304, 423 A.2d 1262, 1267 (1980); *Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437, 442 (Tenn. App. 1994); *Vibbert v. PAR, Inc.*, 224 S.W.3d 317, 322 (Tex. App. 2006); *Park County Implement Co. v. Craig*, 397 P.2d 800, 801 (Wyo. 1964).

CAC argues motor vehicles are not goods when "purchased for personal use, not for commercial purposes." (Pl. Opp. to Del Plea in Bar/Mot. for Partial Summ. J. 8-9) (citing Va. Code Ann. § 8.1A-103.) Virginia Code § 8.1A-103 provides the provisions of the UCC should be liberally construed to further the policies underlying the statute, including "to simplify, clarify, and modernize the law governing commercial transactions." Nothing in the statute, however, suggests the purchase of an item for personal use is not a commercial transaction. Moreover, several Virginia circuit courts have concluded items acquired for personal use qualify as goods. *See French v. York Int'l Corp.*, 72 Va. Cir. 538, 541-42 (Greene County 2007) (holding that an air conditioning unit installed in a home constitutes a good for purposes of the UCC); *Cash v. GWVA Corp.*, 74 Va. Cir. 243, 246 (Fairfax County 2007) (holding that a mobile home purchased for personal use falls within the UCC's definition of a good). This Court concludes that motor vehicles fall within the UCC's definition of a good, even if the vehicle is acquired for personal use.

The next question is whether the Contract constitutes a "transaction in goods." CAC's contention that its transaction with Ms. Coates is a loan agreement independent from the sale of the motor vehicle is unpersuasive. The Contract, which is titled "Motor Vehicle Installment Sale Contract," provides as follows: "You [Ms. Coates] agree to buy and [Eastern's Toy Store] agrees to sell the following vehicle: [1997 Dodge Four Door Intrepid]." To effect the sale, the Contract transfers title of the car to Ms. Coates and specifies the terms of the payment plan by which Ms. Coates is obligated to pay CAC pursuant to an assignment of Eastern's interests under the contract to CAC.

The Contract therefore plainly memorializes a sales agreement for a motor vehicle. CAC's standing to bring the instant cause of action based on that sales contract stems from an Assignment clause located on the back of the Contract which transferred all of Eastern's interest and rights in the sales Contract to CAC. This Court concludes the Contract constitutes a "transaction in goods" and is thus governed by Article 2 of the UCC.

A split of authority exists as to whether contracts for the sale of a motor vehicle that also grant a security interest to the seller are governed by Article 2 or Article 9 of the UCC. The distinction is material because Article 9 contains no statute of limitations other than the five-year statute of limitations set forth in Virginia Code § 8.01-246.

The majority view, which has been adopted by nine of the eleven states that have addressed the issue, considers installment contracts for the sale of a motor vehicle to be governed by Article 2. *See DaimlerChrysler Serv. N. Am., L.L.C. v. Ouimette*, 175 Vt. 316, 320, 830 A.2d 38, 42 (2003). The reasoning underlying the majority position is set forth in detail in the case of *Associates Discount Corp. v. Palmer*, 47 N.J. 183, 187, 219 A.2d 858, 861 (1966).

Two cases, *North Carolina Nat. Bank v. Holshouser*, 38 N.C. App. 165, 247 S.E.2d 645 (1978), and *Chaney v. Fields Chevrolet*, 264 Ore. 21, 503 P.2d 1239 (1972), purportedly represent the minority view. *Holshouser*, however, is inapposite to the present action because its holding was predicated on commentary that was adopted by the North Carolina legislature with its enactment of the UCC but rejected by the Virginia General Assembly. Additionally, *Chaney* explicitly recognizes that Article 2 should govern cases to recover the purchase price of a motor vehicle and thus supports the conclusion that Article 2 governs the instant case.

This Court adopts the majority view and holds that actions to recover the purchase price of a motor vehicle are governed by Article 2 of the UCC even if the contract grants the seller a security interest.

The limitations period under Article 2 of the UCC is four years. Va. Code Ann. § 8.2-725 (1991). Hence, any cause of action arising more than four years before CAC filed its action is barred.

## B. *Running of the Limitations Period*

The second issue is determining when the limitations period began to run. Ms. Coates argues that, because the Contract is a divisible installment contract, each missed payment gave rise to a separate cause of action. The limitations period for enforcing that cause of action began to run when the payment became due. Accordingly, Ms. Coates contends all payments due more than four years before CAC filed its suit are unrecoverable.

A cause of action accrues when the breach occurs. Va. Code Ann. § 8.2-725 (1964). The breach for the non-payment of an installment of a payment plan occurs at the time the installment becomes due. *See Williams v. Matthews*, 103 Va. 180, 48 S.E. 861 (1904). Therefore, the Court concludes the statute of limitations for non-payment of an installment of a payment plan

begins to run at the time each installment becomes due. *Id.* (holding the statute of limitations on a claim to recover five unpaid installments of stock subscription ran from dates on which unpaid installments were due); *Ten Braak v. Waffle Shops, Inc.*, 542 F.2d 919, 924, n. 6 (4th Cir. 1976) ("[W]e note that Virginia does follow the majority rule recognizing that contracts for installment payments are divisible, thereby permitting separate actions to be maintained to recover installment payments as they fall due.")

CAC argues that, under *Williams*, only suits to recover unpaid rent are divisible. However, the Supreme Court of Virginia has previously concluded that an installment contract for the sale of a motor vehicle is a divisible contract. *Jones v. Morris Plan Bank of Portsmouth*, 168 Va. 284, 191 S.E. 608 (1937). In *Jones*, the plaintiff entered into an installment contract for the purchase of a car from defendant automobile dealer. 168 Va. at 287-88, 191 S.E. at 608. The Court concluded that Virginia recognizes that contracts for installment payments are divisible, thereby permitting separate actions to be maintained to recover installments as they fall due. *Id.* at 292, 191 S.E. at 610 (1937).

In this case, the Contract for the purchase of the car required Ms. Coates to make monthly installments of $365.87 beginning on March 26, 2001. The Contract is therefore a divisible, installment contract. Under the rule set forth in *Williams*, a cause of action for each missed payment arose each time Ms. Coates failed to make a payment and the statute of limitations for each cause of action began to run the date the payment was due.

The Court finds that CAC's action to recover any installment due more than four years before CAC filed the instant action, i.e. before January 25, 2004, is barred by the UCC statute of limitations.

*Conclusion*

Ms. Coates' Plea in Bar/Motion for Partial Summary Judgment is granted, and all claims for installment payments due prior to January 25, 2004, are found to be barred by the statute of limitations.